PASCHKE v RETOOL INDUSTRIES

Docket No. 96276. Argued January 12, 1994 (Calendar No. 6). Decided
July 5, 1994.

Raymond R. Paschke sought worker's compensation benefits,
alleging total disability arising out of his employment with
Retool Industries. Soon after, he relocated to Florida. There-
after, he sought and obtained unemployment compensation. A
worker's compensation hearing referee denied benefits. The
Worker's Compensation Appeal Board reversed. The Court of
Appeals, WEAVER, P.J., and WAHLS and TAYLOR, JJ., reversed
in an opinion per curiam, finding that the claim of total
disability was barred by the doctrine of judicial estoppel be-
cause it was inconsistent with previous assertions made to the
Michigan Employment Security Commission that he was will-
ing and able to work (Docket No. 131280). On rehearing, the
Court further explained that under the doctrine of judicial
estoppel only wholly inconsistent claims are prohibited and
that the receipt of unemployment benefits would not preclude a
claim of partial disability for the same period. The claimant
appeals.

In an opinion by Justice MALLETT, joined by Chief Justice
CAVANAGH, and Justices LEVIN and BOYLE, the Supreme Court
*held:*

A representation made before the Michigan Employment
Security Commission in order to secure unemployment benefits
that a person is willing and able to work may not be used to
preclude a subsequent worker's compensation claim of total
disability during the same period.

1. The doctrine of judicial estoppel precludes the assertion of
inconsistent positions; however, the mere assertion of inconsis-
tent positions is not sufficient to invoke estoppel. Rather, there
must be some indication that the court in the earlier proceed-
ing accepted that party's position as true. To apply, the claims
must be wholly inconsistent. In this case, there is neither

REFERENCES

Am Jur 2d, Workers' Compensation §§ 381, 413.

Application for, or receipt of, unemployment compensation benefits
as affecting claim for workmen's compensation. 96 ALR2d 941.

statutory nor judicial support for the Court of Appeals determination that the plaintiff's representation before the MESC that he was ready and available for work, was wholly inconsistent with his subsequent claim of total disability during the same period.

2. A comparison of the Worker's Disability Compensation Act and the Employment Security Act provides no support for the conclusion that the plaintiff's receipt of unemployment benefits estops his worker's compensation claim of total disability for the same period. Nor do the statutes provide that a claim that a person is ready and able to work is inherently inconsistent with a subsequent claim of total disability for the same period. Further, the worker's compensation offset provision suggests that the Legislature contemplated the simultaneous recovery of worker's compensation and unemployment benefits.

3. Representations made before the MESC generally may not be used to estop claims in other forums in which the MESC is not a party. Long delays in pursuing worker's compensation claims can make interim measures a vital necessity. The use of MESC determinations in other forums not only may disadvantage the parties to such litigation, but actually may impede the objectives of the unemployment compensation system itself.

Justice BRICKLEY, concurring in the result, stated that because MCL 418.358; MSA 17.237(358) provides a specific legal remedy for the situation presented in this case, it absolutely precludes the application of equitable principles. Thus, the Court of Appeals erred in invoking, sua sponte, the equitable doctrine of judicial estoppel, requiring remand for a determination whether the WCAB applied the correct legal standard, i.e., whether being disabled from particular previous employment suffices to establish disability in the employee's general field of employment pursuant to MCL 418.301(4); MSA 17.237(301)(4).

Reversed and remanded.

Justice GRIFFIN, joined by Justice RILEY, dissenting, stated that, under the particular circumstances of this case, the plaintiff, by seeking and obtaining unemployment compensation benefits, is judicially estopped from claiming that, for the same period, he was totally disabled and entitled to worker's compensation benefits.

Under the doctrine of judicial estoppel, a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding. Use of the doctrine depends on the facts and circumstances of each case. In this case, the plaintiff

tried to get back his former job from the defendant, refused the offer of a different job by the defendant out of an apparent lack of desire to work under a former subordinate, represented to the Michigan Employment Security Commission that he was able and available to work full-time in his usual line of work, sought employment in Michigan and in Florida, yet claims that he is totally disabled, i.e, that his wage-earning capacity in his general field of employment has been foreclosed for the same periods. The doctrine of judicial estoppel goes to the heart of the plaintiff's eligibility for benefits. The Court of Appeals properly applied the doctrine.

198 Mich App 702; 499 NW2d 453 (1993) reversed.

WORKER'S COMPENSATION — UNEMPLOYMENT COMPENSATION — TOTAL DISABILITY — JUDICIAL ESTOPPEL.

A representation made before the Michigan Employment Security Commission in order to secure unemployment benefits that a person is willing and able to work may not be used to preclude a subsequent worker's compensation claim of total disability during the same period.

*Goodman, Eden, Millender & Bedrosian* (by *Roderick V. MacNeal*) for the plaintiff.

*Lacey & Jones* (by *Gerald M. Marcinkoski*) for the defendants.

Amici Curiae:

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers' Association.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Theodore Sachs, Andrew Nickel-hoff,* and *Granner S. Ries*), for Michigan State AFL-CIO.

MALLETT, J. This worker's compensation case comes to us following a reversal of an award by the Court of Appeals. The Court of Appeals found that plaintiff was judicially estopped from assert-

ing his claim of total disability by previous assertions made to the Employment Security Commission that he was willing and able to work.

We reverse the decision of the Court of Appeals and find that plaintiff was not judicially estopped from advancing his claim. A representation made before the MESC that one is willing and able to work, in order to secure unemployment benefits, may not be used to preclude a subsequent claim that one was totally disabled during that same period.

I

There being no showing of fraud, we take the factual findings of the Worker's Compensation Appeal Board as conclusive. Const 1963, art 6, § 28, MCL 418.861; MSA 17.237(861).

Plaintiff Raymond R. Paschke was employed by defendant Retool Industries from 1956 until 1983. During that twenty-seven year span, Mr. Paschke worked in the capacity of office manager. As office manager, he was in charge of funding, client development, payroll, and similar matters. He testified that he spent the majority of his time in customer relations.

In 1981, the owner of Retool Industries sold his interest to Herman Wilson, previously the company foreman. Within less than a month after taking over the business, Mr. Wilson discharged assistant office manager Nelson Nettie, despite admitted discussions before the takeover that he would keep on both Mr. Nettie and plaintiff. While Mr. Wilson testified that he had discharged Mr. Nettie for stealing from the company, he also stated that he had been aware of that stealing before his promise to keep him on. Mr. Nettie denied that he was discharged for stealing. After

terminating Mr. Nettie, Mr. Wilson replaced him as assistant office manager with Carolyn Wilkerson, Mr. Wilson's live-in girl friend.

After the first year of Mr. Wilson's ownership, in late 1982 and early 1983, plaintiff began to experience physical problems such as inability to sleep, chest pains, and headaches. He attributed these ailments to troubling conditions at work. Specifically, he felt that Ms. Wilkerson was given preferential treatment in the form of a relaxed workday schedule and pay increases, while he and other employees received no increased benefits, but actually had their vacation pay benefits cut. Further, he had seen Mr. Nettie discharged, despite Mr. Wilson's promise to keep him on, and plaintiff feared that he might be next to go. He also testified that he felt anxiety regarding his dealings with creditors, who had loaned funds to the company largely on the basis of their past dealings with and trust of him. The company was increasingly unable to satisfy those debts because of financial difficulties, and plaintiff felt that he could not deal honestly with those creditors, because Mr. Wilson refused to discuss workplace finances with him and also refused to deal with the creditors himself.

On March 22, 1983, plaintiff stayed home from work, on the advice of his wife, and sought medical treatment from their family doctor, Robert Tam. Dr. Tam prescribed antidepressants and blood pressure and water pills. He also recommended that plaintiff not return to work.

By June, 1983, plaintiff had begun to feel better, and he contacted Mr. Wilson about resuming his former position as office manager. By registered letter, Mr. Wilson informed plaintiff that he could return to work, but not in his former position. Instead, he offered plaintiff the assistant office

manager position, in which plaintiff would serve as subordinate to his former underling, Ms. Wilkerson, at a corresponding cut in pay. The letter acknowledged that plaintiff's "hypertension and nerves" might be related to work and stated that the board felt a lessening of responsibility might alleviate plaintiff's ailments.

Plaintiff testified that he was "[s]hocked" by this response, that it caused his physical condition to worsen, and that he rejected the offer of reemployment. For the next six months, he received company health and accident benefits. In August, 1983, plaintiff petitioned for worker's compensation benefits, alleging total disability, and soon thereafter relocated to Florida, where he and his wife purchased a home. In November, 1983, he sought and obtained unemployment compensation, over Mr. Wilson's objection.[1]

At the worker's compensation hearing before a hearing referee, plaintiff testified, without objection, to the fact that he had previously received unemployment compensation and that, in order to receive that benefit, he had represented to the MESC that he was ready and able to return to work at some place other than Retool Industries. He also testified that he had unsuccessfully sought work since leaving Retool. His wife testified that he had sent out twenty-five to thirty résumés, primarily in Florida.

The referee found that plaintiff had failed to establish any disability arising out of the course of employment. The ruling was reversed by the WCAB. By order dated June 29, 1990, the WCAB awarded plaintiff total disability benefits on the basis of his hypertension and psychiatric claims.

[1] The WCAB reported that plaintiff received unemployment benefits until November, 1983. However, plaintiff's testimony established that he began receiving unemployment compensation in November, 1983. His last payment was received on July 14, 1984.

Defendants appealed in the Court of Appeals, which found, sua sponte, that plaintiff's worker's compensation claim was barred by the doctrine of judicial estoppel. 197 Mich App 650; 496 NW2d 804 (1992). The Court held that plaintiff's claim was inconsistent with claims earlier made to the MESC that he was willing and able to work.[2]

Following a petition for rehearing, the Court of Appeals clarified its brief holding in the case. 198 Mich App 702; 499 NW2d 453 (1993). While maintaining that plaintiff was judicially estopped from asserting his worker's compensation claim, the Court limited its decision to the facts of plaintiff's case, i.e., a claim for total disability. The Court explained that under the doctrine of judicial estoppel only "wholly inconsistent" claims are prohibited, and that the receipt of unemployment benefits would not preclude a claim of *partial* disability for the same period. *Id.* at 709. Dual recovery might also be allowed if claimant's disability consisted of a latent condition that was not discovered

---

[2] The sum of the Court of Appeals explanation was contained in the following paragraph:

> In applying for and receiving unemployment benefits, plaintiff asserted that he was able to continue to engage in gainful employment. The Court will not allow a party to assert a position and receive a benefit on one side of the ledger, then make a contrary assertion on the other. *Allen v Zurich Ins Co,* 667 F2d 1162 (CA 4, 1982); *SCA Services, Inc v General Mill Supply Co,* 129 Mich App 224; 341 NW2d 480 (1983); *Murdock v Michigan Health Maintenance Organization,* 434 Mich 851; 450 NW2d 264 (1990). [*Id.* at 652.]

There is no indication that plaintiff's representations were *themselves* inconsistent. According to testimony, plaintiff advanced both his unemployment and worker's compensation claims on the premise that he was ready and able to work, although at some place other than Retool Industries. Therefore, the Court of Appeals decision must be read as implying that it was the nature of his claims that was inconsistent, i.e., a claim that one is able and available for work is inherently inconsistent with a claim of total disability for the same period.

until after claimant had sought and received unemployment benefits.

This Court granted leave to appeal. 444 Mich 866 (1993). We reverse.

II

The doctrine of judicial estoppel first emerged in the mid 1800s, in a Tennessee case, *Hamilton v Zimmerman*, 37 Tenn (5 Sneed) 39 (1857). Comment, *Judicial estoppel—Beating shields into swords and back again*, 139 U Pa L R 1711, 1719 (1991). In *Hamilton*, the court determined that the plaintiff was estopped from maintaining a position inconsistent with one he had asserted under oath in an earlier judicial proceeding. Sometimes described as the doctrine against the assertion of inconsistent positions, Comment, *supra* at 1711, judicial estoppel is widely viewed as a tool to be used by the courts in impeding those litigants who would otherwise play "fast and loose" with the legal system. Bigelow, Estoppel (6th ed), p 783. Since *Hamilton*, the doctrine has been adopted by most state and federal courts, in slightly varying forms.[3]

In the context of the administrative proceedings at issue, we adopt the "prior success" model of judicial estoppel:

> Under this doctrine, a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding. [*Lichon v American Univ Ins Co*, 435 Mich 408, 416; 459 NW2d 288 (1990), citing *Edwards v Aetna Life Ins Co*, 690 F2d 595, 598 (CA 6, 1982). Emphasis added.]

---

[3] It is questionable, however, whether the doctrine has been adopted by the United States Supreme Court. See, generally, Comment, *supra.*

Under the "prior success" model, the mere asser-
tion of inconsistent positions is not sufficient to
invoke estoppel; rather, there must be some indica-
tion that the court in the earlier proceeding ac-
cepted that party's position as true.[4] Further, in
order for the doctrine of judicial estoppel to apply,
the claims must be wholly inconsistent.

While the Court of Appeals correctly stated that
only wholly inconsistent claims were precluded, we
find that the panel's application of that standard
to the facts in this case was clearly error. There
exists neither statutory nor judicial support for
the Court of Appeals determination that plaintiff's
representation that he was ready and available for
work, made before the MESC, was wholly inconsis-
tent with his subsequent claim of total disability
during the same period.

A

This Court and the lower courts of Michigan
have devoted considerable time and energy to the
examination of both statutes involved in this dis-
pute: the Worker's Disability Compensation Act,
MCL 418.101 et seq.; MSA 17.237(101) et seq., and
the Employment Security Act, MCL 421.1 et seq.;
MSA 17.501 et seq. In the course of this explora-
tion, a number of guiding principles has emerged
that might be helpful in evaluating the inter-
relation of the two statutes in the present case.

We have previously explained that the WDCA is
in derogation of the common law, and its terms

[4] In contrast to the Hamilton test, the "prior success" model is more
narrowly tailored to allow for alternative pleadings in the same or
different proceedings. As such, it may be seen as focusing less on the
danger of inconsistent claims, than on the danger of inconsistent
rulings. See, e.g., note, Judicial estoppel: The refurbishing of a judicial
shield, 55 Geo Wash L R 409, 426 (1987); comment, Precluding incon-
sistent statements: The doctrine of judicial estoppel, 80 NW U L R
1244, 1253 (1986).

should be literally construed without judicial enhancement.

> The workmen's compensation law is a departure, by statute, from the common law, and its procedure provisions speak all intended upon the subject. *Rights, remedies, and procedure thereunder are such and such only as the statute provides.* If the statute is short of what it should contain in order to prevent injustice, the defects must be cured by future legislation and not by judicial pronouncement. [*Luyk v Hertel,* 242 Mich 445, 447; 219 NW 721 (1928). Emphasis added.]

Where the statutory language is clear, the courts should neither add nor detract from its provisions. Nevertheless, where ambiguity exists, and judicial interpretation is needed, the act should be liberally construed to grant rather than to deny benefits. *Bower v Whitehall Leather Co,* 412 Mich 172, 191; 312 NW2d 640 (1981).

Like the WDCA, the Employment Security Act is a legislative construct intended to "provide relief from the hardship caused by involuntary unemployment . . . ." *Storey v Meijer, Inc,* 431 Mich 368, 377; 429 NW2d 169 (1988). Accordingly, this Court will not "broaden or extend the disqualifications fixed, in plain language, by the legislature." *Thomas v Employment Security Comm,* 356 Mich 665, 669; 97 NW2d 784 (1959). We will, however, keep in mind the legislative purpose of the statute, "to get 'money into the pocket of the unemployed worker at the earliest point that is administratively feasible.' " *Storey,* 431 Mich 377, quoting *California Dep't of Human Resources Development v Java,* 402 US 121, 135; 91 S Ct 1347; 28 L Ed 2d 666 (1971).

This Court has also had occasion to examine the interplay of the worker's compensation and unem-

ployment compensation systems, and, in doing so, has emphasized the distinct character and objectives of the two institutions. In *Bartels v Ford Motor Co,* 292 Mich 40; 289 NW 322 (1939), the defendant argued that it should be relieved of making partial disability payments to the claimant during a period in which the claimant was also receiving unemployment compensation. In rejecting the defendant's claim, we explained:

> The legislative intent was to set up two independent organizations for the administration of two kinds of compensation, payable from different funds or sources. Until the unemployment compensation act became the law of this State there could be no question of plaintiff's right to compensation for the disputed period; and *to permit a set-off by the department of labor and industry would in effect extend relief to the employer beyond the express terms of the workmen's compensation act.* The contingency which has arisen in this case has come about by reason of the passage of the unemployment compensation act. The remedy lies with the legislature.[5] [*Id.* at 46. Emphasis added.]

The Legislature has since passed a WDCA provision that allows for a dollar-for-dollar setoff between worker's compensation and unemployment benefits.[6] However, the underlying premise of *Bartels* remains valid, and we will not sanction the denial or diminution of otherwise available worker's com-

---

[5] See also *Henry v Ford Motor Co,* 291 Mich 535, 541; 289 NW 244 (1939), in which we stated, in regard to the simultaneous receipt of unemployment benefits and worker's compensation:

> Both awards are purely statutory and, while there is no question about some incongruity in the provisions, nevertheless we are bound by the wording of the statutes. The remedy is with the legislature who alone can provide for deductions or denial of compensation under one act or the other.

[6] MCL 418.358; MSA 17.237(358).

pensation benefits because of claims cognizable only under the Employment Security Act, absent legislative authorization.

### B

Turning to the statutes in question, we can find no support for the Court of Appeals conclusion that plaintiff's receipt of unemployment benefits estops his total disability claim for the same period. Unlike several states,[7] the Michigan Legislature has not explicitly prohibited the receipt of total disability payments for a period in which unemployment was received.[8] Nor is there evidence that, under the statutes, a claim that one is ready and able to work is inherently inconsistent with a subsequent total disability claim for the same period.

Professor Larson explored the latter point in his treatise on worker's compensation law, in which he explained:

At first glance the two positions may appear mutually exclusive; but the inconsistency disappears when the special meaning of disability in workmen's compensation is remembered, involving, as we have seen, the possibility of some physical capacity for work which is thwarted by the inability to get a job for physical reasons. Thus, the injured claimant may honestly represent to the Employment Security office that he is able to do some work, and with equal honesty tell the

[7] See 4 Larson, Workmen's Compensation, § 97.20, pp 18-11 to 18-19. Further, we note that the temporary suspension measures applied in those states are far less severe than the potentially permanent forfeiture advocated here by defendants.

[8] The Employment Security Act does prohibit the receipt of unemployment compensation during a period of continuous disability, MCL 421.28a(5); MSA 17.530(1)(5). However, there is no indication that the reverse is true, and we decline to read a reciprocal provision into the WDCA, given the differing objectives and mechanisms of the two acts.

Compensation Board later that he was totally disabled during the same period since, although he could have done some kinds of work, no one would give him a job because of his physical handicaps. [1C Larson, Workmen's Compensation, § 57.65, p 10-492.50.]

Further, the offset provision of the Michigan worker's compensation statute suggests that the Legislature contemplated the simultaneous recovery of worker's compensation and unemployment benefits. MCL 418.358; MSA 17.237(358). As previously discussed, this provision allows a dollar-for-dollar setoff between unemployment benefits and benefits sought under worker's compensation. Importantly, it specifically references not only the partial disability section of the statute, but the section concerning total disability as well, implicitly acknowledging that the Legislature envisaged instances in which both unemployment and total disability benefits would be recoverable.

In rejecting the estoppel theory applied by the Court of Appeals and urged by defendants, we act in concert with numerous other jurisdictions faced with the same question, within the context of similar legislation.[9] We also act in accordance with past case law[10] and with policy considerations that require us to interpret liberally both the wdca and

[9] See 1C Larson, *supra,* § 57.65, p 10-492.51, n 62. As of its 1992 publication, Larson pointed to seventeen jurisdictions that had refused, absent legislative authorization, to deny or diminish worker's compensation benefits on the basis of representations made for unemployment compensation purposes that claimant was ready and able to work. Several of those jurisdictions were faced, as are we, with reconciling unemployment claims with claims for total disability. See, e.g., *Wells v Jones,* 662 SW2d 849 (Ky App, 1983); *Dolbow v Holland Industrial, Inc,* 64 NC App 695; 308 SE2d 335 (1983); *Crow's Hybrid Corn Co v Industrial Comm,* 72 Ill 2d 168; 380 NE2d 777 (1978); *Utica Mutual Ins Co v L J Pioda,* 90 Ga App 593; 83 SE2d 627 (1954).

[10] See, e.g., *Henry,* n 5 *supra,* finding that an award of total disability was not precluded by receipt of unemployment benefits during the same period.

the Employment Security Act, in order to fulfill their remedial objectives.[11]

C

We further find persuasive plaintiff's assertion that even were the claims inconsistent, representations made before the MESC may not generally be used to estop claims in other forums, where the MESC is not a party to the proceeding.[12] The Employment Security Act provides in pertinent part:

Information obtained from any employing unit or individual pursuant to the administration of this act, and determinations as to the benefit rights of any individual shall be held confidential and shall not be disclosed or open to public inspection other than to public employees in the performance of their official duties pursuant to this act in any manner revealing the individual's or the employing unit's identity. However, any information in the commission's possession that may affect a claim for benefits or a charge to an employer's rating account shall be available to interested parties. *Except as provided in this act, such information and determinations shall not be used in any action or proceeding before any court or administrative tribunal unless the commission is a party to or a complainant in the action or proceed-*

[11] In a wage-loss system, in which disability is phrased in terms of a limitation of the worker's earning capacity, rather than the degree of physical impairment, physical disability is only one factor of the equation. See St. Antoine, Workers' Compensation in Michigan: Costs, Benefits, and Fairness, pp 24-26. The fact that the MESC may have adjudged plaintiff able and available to perform some work for which he was qualified by training and experience simply does not foreclose the possibility that, during that same period and thereafter, plaintiff actually suffered a limitation of his earning capacity, even one rising to the level of total disability. See dissent, pp 531-532.

[12] In reaching this determination, we do not pass upon the possible evidentiary uses of such representations. See *Murdock v Michigan Health Maintenance Organization,* n 2 *supra* (remanding the case to the WCAB for reconsideration of its factual finding of disability in light of the plaintiff's receipt of unemployment compensation benefits).

*ing, or unless used for the prosecution of fraud, civil proceeding, or other legal proceeding pursuant to subdivision (2).* Any report or statement, written or verbal, made by any person to the commission, any member of the commission, or to any person engaged in administering this law shall be a privileged communication, and a person, firm, or corporation shall not be held liable for slander or libel on account of a report or statement. Such records and reports in the custody of the commission shall be available for examination by the employer or employee affected. [MCL 421.11(b)(1); MSA 17.511(b)(1). Emphasis added.]

In *Storey v Meijer, Inc, supra,* we interpreted the above provision to prohibit the use of factual determinations of the MESC to collaterally estop the litigation of issues in a subsequent civil proceeding. We determined that application of collateral estoppel to such determinations would be contrary to legislative intent as well as public policy considerations that support expeditious and nonadversarial unemployment proceedings. Were MESC determinations to have binding effect upon subsequent and more consequential civil actions, employers would be more likely to contest their comparatively minor unemployment liability, thus significantly delaying the recovery of unemployment benefits. *Id.* at 378. Further, the binding effect of unemployment compensation determinations might cause a potential claimant to forgo those benefits, otherwise available, in order to preserve a later claim for civil damages. It might also cause one who pursued unemployment benefits, ignorant of their effect on future civil claims, to unknowingly and permanently forfeit his right to recovery. *Id.* at 378-379.

The same policy considerations that governed in *Storey* are applicable where unemployment bene-

fits are balanced against worker's compensation. We have previously acknowledged that long delays in pursuing worker's compensation claims can make interim measures a vital necessity for those suffering from involuntary unemployment.[13] As in *Storey*, we have no desire to impede those who would otherwise take advantage of such interim measures, particularly when a statutory offset provision precludes dual recovery by claimants.[14]

Defendants argue that judicial estoppel is appropriate here because, unlike in *Storey*, it is plaintiff's *statements*, not the determinations of the MESC, that are being used to estop him. Accordingly, defendants claim that the protections afforded under § 11(b)(1) are not implicated by the facts of this case.

---

[13] In *Bower v Whitehall Leather Co, supra* at 193, we determined that the plaintiff's refusal of favored work was reasonable because he had subsequently moved to Florida to accept a new position. In reaching that decision, we relied partly on the economic necessity of a claimant securing a means of support pending resolution of his disability claim:

> Further, it is important to recognize that if the employer does not pay compensation voluntarily, the employee may be without any means of support until an award of benefits is made by the referee at the hearing. In the instant case, the hearing did not take place until nine months after the claim was filed, regrettably only a short time in the life of a court proceeding, but a long time in the economic existence of an individual. Yet the threat of denial of benefits would discourage the worker from seeking, and another employer from offering, a substitute job the claimant may need to survive.

Since the Court's 1981 decision in *Bower,* the delay in pursuing a worker's compensation claim has, if anything, increased. In plaintiff's case, his petition for hearing was received by the WCAB on August 9, 1983, and his case was not heard until July 15 and 16, 1985, nearly two years later.

[14] These findings apply with equal or greater force to the argument advanced by amicus curiae, Michigan Self-Insurers' Association, that res judicata should apply to bar plaintiff's claim. This contention runs counter to the Court's decision in *Storey,* and, amicus curiae has failed to provide any relevant case law to support its argument. No cases cited by amicus curiae involved previous claims made before the MESC.

We disagree. As discussed above, our theory of judicial estoppel differs from the original *Hamilton* formulation in that it requires a party to have *successfully* asserted an inconsistent position in an earlier proceeding in order for estoppel to apply. A finding of estoppel is inextricably linked to the MESC findings regarding plaintiff's unemployment claims. Moreover, the same policy considerations that we found persuasive in *Storey* are applicable here. It would be counter to the objectives of both unemployment and worker's compensation either to increase the litigiousness of unemployment claims or to discourage workers from seeking unemployment benefits altogether.

Lastly, defendants argue that by voluntarily testifying about the substance of his representations made before the MESC, plaintiff waived any privilege attached thereto. This argument fails because the Employment Security Act provision, as interpreted by this Court, provides for an *absolute privilege:*

> We find that § 11(b)(1) clearly and unambiguously prohibits the use of MESC information and determinations in subsequent civil proceedings *unless the MESC is a party or complainant in the action.* [*Storey,* 431 Mich 376. Emphasis added.]

See also *Wojciechowski v General Motors Corp,* 151 Mich App 399, 406; 390 NW2d 727 (1986). There is no indication that this privilege is subject to waiver by the parties.[15]

---

[15] Defendants' attempt to analogize § 11(b)(1) to the attorney-client privilege is inapposite. As described by this Court, the attorney-client privilege is personal to the client and hence may be waived by that client:

> There is a privilege of secrecy as to what passes between attorney and client, but it is the privilege of the client and he

The rationale for the bright-line test provided by the Legislature is clear from a policy standpoint. As discussed above, use of MESC determinations in other forums may not only disadvantage the parties to that litigation,[16] but may actually impede the objectives of the unemployment compensation system itself. We will not read a waiver provision into § 11(b)(1) when it is not evident from the language that one was intended, and when the effect of a waiver would be to impede legislative objectives.

III

We find that the Court of Appeals clearly erred in determining, sua sponte, that plaintiff's total disability claim was judicially estopped by earlier representations before the MESC that he was ready and able to work. Neither the language nor the policy objectives of the Worker's Disability Compensation Act or the Employment Security Act support that result. Accordingly, we reverse the decision of the Court of Appeals. We remand this case to the Court of Appeals to consider those

    may waive it if he so chooses. . . . It is not the privilege of the
    court or of any third party. [*Passmore v Passmore Estate,* 50
    Mich 626, 627; 16 NW 170 (1883), quoted in *In re Dalton
    Estate,* 346 Mich 613, 621; 78 NW2d 266 (1956).]

In contrast, § 11(b)(1) is constructed less as a personal privilege than a systemic policy. There is no indication in the language of the section that the action of either party is necessary to give it effect, or that the action of either party can obviate its effect.

[16] Under the facts of this case, we have focused primarily on the negative effect that judicial estoppel would have upon the potential *claimant.* Nevertheless, it seems clear that employers might also be disadvantaged by the binding effect of MESC proceedings. For instance, an employer who succeeds in defeating an unemployment claim on the ground that claimant was *not* ready and able to work, could be held bound by that assertion in later worker's compensation or civil proceedings.

issues previously raised by the parties but not addressed by that Court.

Cavanagh, C.J., and Levin and Boyle, JJ., concurred with Mallett, J.

Brickley, J. (*concurring*). While I agree with the majority's conclusion that plaintiff's total disability claim is not barred by judicial estoppel, and that the Court of Appeals erred by holding otherwise, I do not subscribe to the rationale offered for this resolution and, accordingly, am compelled to write separately. I also write separately to expressly align myself with the dissenting position for a remand to the Court of Appeals so that it may ultimately address the merits of plaintiff's total disability claim, and specifically the issue whether the WCAB applied the correct legal standard.

I

It is well established that "equity follows the law," and that where legislation provides an adequate legal remedy, the judiciary may not create additional relief by invoking equitable doctrines.[1] The Legislature has devised a specific remedy—i.e., an offset provision—for the situation presented here. MCL 418.358; MSA 17.237(358). The availability of this legal remedy absolutely precludes the application of equitable principles, and, accordingly, the Court of Appeals clearly erred by invoking, sua sponte, the equitable doctrine of judicial estoppel in this case.

I believe that the majority fails to adequately

---

[1] *Hoffman v Burkhammer*, 373 Mich 187; 128 NW2d 503 (1964); *Schantz v Ruehs*, 348 Mich 680; 83 NW2d 587 (1957); *Ramirez v Bureau of State Lottery*, 186 Mich App 275; 463 NW2d 245 (1990).

capitalize upon this preclusion argument. While some discussion of MCL 418.358; MSA 17.237(358) is offered, see *ante* at 514, this solitary paragraph does not discuss the statutory provision as creating a legal remedy, but instead focuses upon the provision as "suggest[ing] that the Legislature contemplated the simultaneous recovery of worker's compensation and unemployment benefits." *Id.* This failure to focus upon the *remedial* nature of MCL 418.358; MSA 17.237(358), combined with an in-depth discussion of why judicial estoppel does not deny worker's compensation benefits in this case,[2] sends an erroneous message that judicial estoppel is somehow relevant to the issue presented here. It is not—the Legislature has spoken.

II

The majority ultimately remands this case to the Court of Appeals for consideration of those issues "previously raised by the parties but not addressed by that Court." *Ante* at 520. I agree with this remand, but write separately to reiterate an important point made by the dissent: namely, that on remand the Court of Appeals must determine "whether the WCAB applied the correct legal standard—i.e., whether being disabled from one's previous particular employment suffices to establish 'disability' in the employee's 'general field of employment' pursuant to § 301(4)." *Post* at 534, n 6 (GRIFFIN, J., dissenting).

Defendant's appeal from the WCAB decision specifically challenged the board's finding of a total disability. While at this juncture I cast no opinion regarding the appropriateness or accuracy of the WCAB's total disability conclusion, it seems clear that this important issue, like most issues properly

---

[2] See *ante* at 513-515.

raised on an appeal, deserves the full attention of the Court of Appeals on remand.

For these reasons, I concur in the result reached by the majority.

GRIFFIN, J. I respectfully dissent. I agree with the Court of Appeals that, under the particular circumstances of this case, plaintiff Raymond Paschke, by seeking and obtaining unemployment compensation benefits, is judicially estopped from claiming that, for the same period, he was totally disabled and entitled to worker's compensation benefits.

Under the doctrine of judicial estoppel, "a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." *Lichon v American Universal Ins Co,* 435 Mich 408, 416; 459 NW2d 288 (1990). The underpinnings of the doctrine were explained by the court in *Edwards v Aetna Life Ins Co,* 690 F2d 595, 599 (CA 6, 1982):

> The essential function of judicial estoppel is to prevent intentional inconsistency; the object of the rule is to protect the judiciary, as an institution, from the perversion of judicial machinery. . . . Judicial estoppel addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another tribunal. If the second tribunal adopted the party's inconsistent position, then at least one court has probably been misled. See *Konstantinidis v Chen* [200 US App DC 69, 74] 626 F2d [933] 938 [1980].
>
> In light of the policies underpinning judicial estoppel, the rule can not be applied in a subsequent proceeding unless a party has successfully asserted an inconsistent position in a prior proceeding. . . . Absent judicial acceptance of the inconsistent position, application of the rule is

unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected; the perception that either the first or the second court was misled is not present.

The doctrine of judicial estoppel is to be applied with caution. As the court explained in *Allen v Zurich Ins Co,* 667 F2d 1162, 1166-1167 (CA 4, 1982),

> The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, but they may be found where neither collateral estoppel nor equitable estoppel . . . nor any requirements of election of remedies or theories . . . would apply. Its essential function and justification is to prevent the use of "intentional self-contradiction . . . as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano v Central R Co,* 203 F2d [510] 513 [CA 3, 1953].

The instant case involves interpretation of statutes governing two different compensation systems, the Michigan Employment Security Act and the Worker's Disability Compensation Act. As a condition precedent to the receipt of unemployment benefits, the MESA requires:

> An unemployed individual shall be eligible to receive benefits with respect to any week *only if* the commission finds that . . . [t]he individual is able and available to perform suitable full-time work of a character which the individual is qualified to perform by past experience or training, which is of a character generally similar to work for which the individual has previously received wages, and for which the individual is available, full time, either at a locality at which the individ-

ual earned wages for insured work during his or her base period or at a locality where it is found by the commission that such work is available. [MCL 421.28(1)(c); MSA 17.530(1)(c). Emphasis added.]

The definition of "disability" for worker's compensation purposes at the time of the plaintiff's alleged injuries provided:

As used in this chapter, "disability" means a *limitation of an employee's wage earning capacity in the employee's general field of employment* resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss. [MCL 418.301(4); MSA 17.237(301)(4). Emphasis added.][1]

Plaintiff in the case at bar sought and was awarded unemployment benefits following a hearing contested by his employer, defendant Retool Industries. He subsequently filed for worker's compensation benefits, alleging that he suffered total disability during that same period. He ultimately received the desired benefits from the Worker's Compensation Appeal Board. While the MESA prohibits the receipt of unemployment compensation benefits during a period of continuous disability, MCL 421.28a(5); MSA 17.530(1)(5),[2] the converse is

---

[1] A different standard took effect in June 1987, defining "disability" as "a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training . . . ." MCL 418.301(4); MSA 17.237(301)(4), as amended by 1987 PA 28. However, this definition applies solely to those injured on or after its effective date. *Turrentine v General Motors Corp,* 198 Mich App 572; 499 NW2d 411 (1993).

[2] MCL 421.28a(1), (5); MSA 17.530(1)(1), (5) provides in pertinent part:

(1) Notwithstanding any other provision of this act, an unemployed individual who has a benefit year in effect and who has not exhausted benefit entitlement may have unused credit

not statutorily proscribed. The WDCA does not explicitly address the present situation—where a claimant who professes to be "able and available" to work so as to receive unemployment benefits subsequently seeks worker's compensation benefits for alleged total disability during the same period on the basis of his claim that he was unable to return to work for his specific former employer, not necessarily the general field of available employment.

Plaintiff maintains that his successful assertion of his ability to work for purposes of unemployment compensation eligibility is not irreconcilably inconsistent with his claim of disability as defined in the WDCA. Because entitlement to unemployment compensation benefits compares the claimant against a different field of labor than does entitlement to worker's compensation benefits, plaintiff alleges that there is no inconsistency in the assertion that there is some work that a claimant such as himself "is qualified to perform by past experience or training," MCL 421.28(1)(c); MSA 17.530(1)(c), so as to qualify for unemployment compensation benefits, but that is not within his general field of employment in which he was employed by defendant under MCL 418.301(4); MSA 17.237(301)(4) for purposes of worker's compensation. Simply put, "[he] was entitled to unemployment compensation benefits because there was some work he could perform, and also entitled to worker's com-

weeks preserved during a period of continuous involuntary disability if a written request from the individual to preserve the unused credit weeks is received by the commission . . . .

* * *

(5) As used in this section, a period of "continuous disability" means a period continuing for more than 14 consecutive days during which an unemployed individual is not able and available to perform full-time work, as described in section 28(1)(c), due to injury, illness, or hospitalization.

pensation benefits because there is some work he cannot perform."

Supporting this point of view, the majority in the instant case cites Professor Larson for the proposition that

> "[a]t first glance the two positions may appear mutually exclusive; but the inconsistency disappears when the special meaning of disability in workmen's compensation is remembered, involving, as we have seen, the possibility of some physical capacity for work which is thwarted by the inability to get a job for physical reasons. Thus, the injured claimant may honestly represent to the Employment Security office that he is able to do some work, and with equal honesty tell the Compensation Board later that he was totally disabled during the same period since, although he could have done some kinds of work, no one would give him a job because of his physical handicaps. [1C Larson, Workmen's Compensation, § 57.65, p 10-492.50.]" [*Ante,* pp 513-514.]

Use of the doctrine of judicial estoppel is fact specific and depends on the facts and circumstances of each case. The particular facts now before us differ significantly from the situation described by Larson, *supra,* and the situation involved in *Henry v Ford Motor Co,* 291 Mich 535; 289 NW 244 (1939), also cited by the majority.

First, as already indicated, plaintiff, by the mere fact of his application for and acceptance of unemployment benefits,[3] represented to the MESC that

---

[3] It is unnecessary to rely upon plaintiff's representations made to the MESC and elicited at the worker's compensation hearing (including the attendant evidentiary issues that accompany the use of these statements, see majority opinion, *ante,* pp 515-519; *Storey v Meijer,* 431 Mich 368; 429 NW2d 169 [1988]), in order to find irreconcilable inconsistency here. The relevant statutory standards for the MESA and the WDCA set forth above, when applied to the record before the Court (independent of any testimony given to the MESC) provide a sufficient basis for the application of judicial estoppel.

he was

> able and available to perform suitable full-time
> work of a character which [he] is qualified to
> perform by past experience or training, which is of
> a character generally similar to work for which
> [he] has previously received wages, and for which
> [he] is available, full time . . . . [MCL 421.28(1)(c);
> MSA 17.530(1)(c).]

Plaintiff was qualified by his past experience to be
an office manager. Plaintiff's testimony indicates
that he began receiving unemployment compensa-
tion in November 1983, and received his last pay-
ment on July 14, 1984. On August 5, 1983, plain-
tiff filed a petition for hearing, claiming disability
of

> [h]ypertension, nervousness, depression and gout.
> Aggravation of pre-existing conditions, known and
> unknown and the complications, developments and
> sequelae thereof.

He based his claim on an occupational disease
date of March 22, 1983, linked to

> [p]ressures of companies [sic] financial problems
> and trouble shooting for the company and having
> burden shifted to him and being demoted from
> office manager to assistant to the manager and
> perceptions of being discriminated against due to
> age caused him to get upset, be tense and nervous
> and; all arising out of and in the course of the
> employment.

A hearing referee denied plaintiff's claim. On
appeal, plaintiff claimed that he sustained his
burden of proof in proving psychiatric or hyperten-
sion disabilities of a continuing nature. The WCAB

agreed, and in an opinion dated June 29, 1990, ordered

> that the decision of the [hearing referee] in this cause shall be and it hereby is reversed. Plaintiff is found to be totally disabled as of March 22, 1983, subject to a personal injury of a psychiatric nature and hypertension. Defendant shall pay weekly benefits of $280.19 per week from March 23, 1983, to July 15, 1985, and until further order . . . .

At the worker's compensation hearing, plaintiff testified that as of June 1983 he was able to resume full-time unrestricted work following his medical leave:

> *Q.* Did you want to return to work?
> *A.* Yes.
> *Q.* Did you communicate that to your employer?
> *A.* Yes.
> *Q.* Now, what was told to you at the time that you requested to be reemployed?
> *A.* I believe it was in June. I told him that I was going to the doctor and I was going to try to get him to give me a release to go back to work, and if so, I would wait until after the Fourth of July.
>
>               * * *
>
> *Q.* Now, during this time you were off up until June, how were you feeling?
> *A.* I was getting to feel better gradually. I would have periods of blood pressure and so on, go up or, like I say, I didn't sleep quite as good. *But I felt I was coming around and saw no reason that I shouldn't try to get back to work.* [Emphasis added.]

Plaintiff testified that he was "[s]hocked" upon learning that he could not resume his regular job but would have to accept what was in effect a demotion. The reason plaintiff gave for not return-

ing to work for defendant was the personalities involved, not the inability to do the job. Plaintiff testified:

> *A.* I couldn't work under those relationships, under those conditions.
> *Q.* What about them can't you do? Can't you handle?
> *A.* The environment primarily, and knowing what I had gone through. I couldn't go back there and work with Carolyn Wilkerson or under Mr. Wilson.
> *Q.* What specifically about the environment?
> *A.* I just couldn't tolerate it. I don't think there would be a close relationship between us in life anymore. Not under the circumstances.
> *Q.* But you have to really describe what exactly about that environment made you get the way you were.
> *A.* Well, the treatment I got or, let's say the cold shoulder, the good term, the conditions of the shop, the relationships with the customers. And I couldn't feel I could—you know, I would be dishonest trying to protect the company towards them. I couldn't protect the company anymore.

Plaintiff really wanted to return to his usual office manager job for defendant, and he admitted:

> *Q.* You wanted to go back to your full, regular job duties? You didn't want to be what you say was demoted? You didn't want any pay or benefit cut; is that correct?
> *A.* Right.
> *Q.* Okay. So you applied for Unemployment Compensation, didn't you?
> *A.* Yes.

After he stopped working at defendant's business, plaintiff looked for other employment. He testified, for example, that he applied for more

than twelve office manager positions in Michigan. He sought office manager jobs from "[a] dozen at least" other employers in Florida after moving there. At the time of trial, plaintiff was still looking for a position with companies like the defendant.

Plaintiff's wife corroborated this testimony, stating that she and plaintiff prepared his résumé and contacted "between twenty-five and thirty" companies in Florida seeking employment for plaintiff in his field. She testified that plaintiff was applying for the same type of office manager position that he had held with defendant in Michigan and that at the time of trial plaintiff was still seeking employment in Florida.

The Court of Appeals succinctly characterized plaintiff's claim, and he does not now dispute it, that

> if he had any disability at all, it was an inability to continue to work for Herman Wilson with Carolyn Wilkerson as office manager. Plaintiff claims that he could do the same managerial work he had been doing for Retool Industries, provided his job environment excluded Carolyn Wilkerson as co-worker and Herman Wilson as employer. [198 Mich App 702, 705; 499 NW2d 453 (1993).]

By virtue of plaintiff's acceptance of unemployment benefits from the MESC, plaintiff averred that he met the condition precedent to the receipt of those benefits, namely, that he was "able and available to perform suitable full-time work [for which he] is qualified to perform by past experience or training . . . ." MCL 421.28(1)(c); MSA 17.530(1)(c). Plaintiff prevailed in this regard following a contested hearing. Yet given the factual background, plaintiff subsequently convinced the WCAB that he was totally disabled in his "general

field" of employment.    MCL 418.301(4); MSA 17.237(301)(4).

This is not a situation in which partial disability has been alleged, or even in which the possibility of some physical capacity for work is thwarted by the inability to get a job for physical reasons, as described by Larson, *supra.* The present facts are likewise distinguishable from *Henry v Ford Motor Co, supra.* In *Henry,* the injured plaintiff was given favored work and was then laid off. He applied for unemployment benefits. The Court recognized that "one permanently disabled to continue the work that he was engaged in when the accident occurred may nevertheless be able to do some light work of a different nature than that in which he was previously engaged." *Id.,* p 538. The Court found no paradox:

> The finding that the employee is totally disabled so far as returning to his pre-injury work is not necessarily inconsistent with a finding that he is able to do, and is available for, the favored or rehabilitating work, so long as he still is in the labor market despite the injury. [*Id.,* p 540.]

However, the Court of Appeals in the instant case appropriately noted,

> Here, in contrast to *Henry v Ford Motor Co, supra,* plaintiff did not forthrightly seek unemployment compensation benefits, indicating a disability-based limitation on the positions he was capable of accepting. Rather, plaintiff indicated an unrestricted ability to continue in managerial employment, in blatant opposition to his subsequent claim of psychiatric and hypertensive disability in precisely the same employment for exactly the same time frame. [198 Mich App 707.]

The instant case presents a plaintiff who tried to

get his former job back from defendant, refused a different job from defendant out of an apparent lack of desire to work under a former subordinate, represented to the MESC that he was "able and available" to work full-time in his usual line of work (office managerial work), sought (and continues to seek) employment in Michigan and now in Florida, yet claims that he is totally disabled, i.e., that his wage-earning capacity in his general field of employment has been foreclosed for the same periods. The absurdity of such double recovery in this particular situation should be acknowledged by the Court.[4]

Plaintiff lastly submits that there is no need to invoke the doctrine of judicial estoppel because the WDCA contains an express provision that reduces a claimant's worker's compensation benefits, dollar for dollar, by the amount of any unemployment compensation previously received. MCL 418.358; MSA 17.237(358).[5] Plaintiff argues that because

[4] The unique circumstances of this case should forestall any notion that the doctrine of judicial estoppel is to be applied with a broad brush. On the contrary, as the Court of Appeals recognized,

Judicial estoppel bars only wholly inconsistent claims; it does not penalize an employee on the basis of information that only belatedly contradicts a factual claim. For example, if an employee claims unemployment compensation on the basis of no disability, but subsequently is diagnosed as suffering from some hitherto unsuspected work-related disabling disease, again, coordination is the proper response. Or, for an employee receiving unemployment compensation, upon discovery of a disability or compensable restriction on prospective employment, nothing compels the application for or acceptance of further unemployment benefits. [198 Mich App 709-710.]

[5] Net weekly benefits payable under section 351, 361, or lump sum benefits under section 835, shall be reduced by 100% of the amount of benefits paid or payable to the injured employee under the Michigan employment security act, Act No. 1 of the Public Acts of the Extra Session of 1936, as amended, being sections 421.1 to 421.67a of the Michigan Compiled Laws, for identical periods of time and chargeable to the same employer. [MCL 418.358; MSA 17.237(358).]

§ 358 specifically references not only the partial disability section of the WDCA, but the section concerning total disability as well (§ 351), the Legislature has implicitly acknowledged instances in which both unemployment and total disability benefits would be recoverable. However, § 358 presupposes an entitlement to worker's compensation benefits. It would apply to the "favored" work situation described in *Henry, supra,* where an employee claims and receives worker's disability compensation benefits from the employer first, resumes "favored" work, and then is involuntarily terminated. In such a situation, the employer would be responsible to reinstate disability compensation benefits and also pay for unemployment insurance benefits for the same period. Section 358 manages this special problem by providing for a setoff adjustment.

In the case at bar, the doctrine of judicial estoppel goes to the very heart of plaintiff's eligibility for benefits. A setoff is irrelevant if the plaintiff should not have been allowed to advance inconsistent positions in the first place.

In conclusion, although the principle of judicial estoppel is one to be applied with caution, I believe that the Court of Appeals properly applied it under the particular circumstances of this case. The record demonstrates that the plaintiff earlier successfully asserted a position respecting his employability that is antagonistic to the position asserted before the WCAB. I would affirm the Court of Appeals decision reversing the WCAB's award of total disability benefits to the plaintiff for the same period that he was receiving unemployment benefits.[6]

---

[6] The matter of judicial estoppel aside, the crux of the instant case is the issue whether the inability to work for one's former employer, and a claim of total psychiatric disability in this regard, limits an

Riley, J., concurred with Griffin, J.

---

employee's "wage earning capacity" in his "general field of employment" under the statutory standard in effect at the time of plaintiff's injury. MCL 418.301(4); MSA 17.237(301)(4).

In *Kidd v General Motors Corp,* 414 Mich 578, 591-592; 327 NW2d 265 (1982), the Court discussed the standard to be used in determining disability:

> It is well-established that the standard to be used in general disability cases is whether there is an impairment in wage-earning capacity. This is determined by comparing post-injury with pre-injury ability to compete with the able-bodied for jobs *within the type of work in which the injury occurred.* [Emphasis added, see also *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 251; 262 NW2d 629 (1978); *Kaarto v Calumet & Hecla, Inc,* 367 Mich 128; 116 NW2d 225 (1962); *Adair v Metropolitan Bldg Co,* 38 Mich App 393, 403; 196 NW2d 335 (1972).]

The Legislature codified this judicial definition of disability when it amended the wdca, 1981 PA 200, in § 301(4), and defined "disability" as "a limitation of an employee's wage earning capacity in the employee's general field of employment . . . ."

Because the Court of Appeals in the case at hand disposed of the case on the issue of judicial estoppel, raised sua sponte, it did not reach the merits of plaintiff's total disability claim. Thus, I would alternatively remand this matter to the Court of Appeals for consideration of whether the wcab applied the correct legal standard—i.e., whether being disabled from one's previous particular employment suffices to establish "disability" in the employee's "general field of employment" pursuant to § 301(4).