# STATE OF MICHIGAN

# COURT OF APPEALS

MBANK, f/k/a PENINSULA BANK,

Plaintiff/Counter-Defendant-
Appellee,

v

JORMA LANKINEN and KATHLEEN
LANKINEN,

Defendants/Counter-Plaintiffs-
Appellants.

UNPUBLISHED
July 21, 2016

No. 323845
Marquette Circuit Court
LC No. 13-051149-CZ

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

The parties before us on appeal have a long and storied history. The most recent chapter arises from the circuit court's summary dismissal of Jorma and Kathleen Lankinen's countercomplaint alleging that mBank "clogged the equity" in their home to prevent redemption following foreclosure. The circuit court found this claim barred by collateral and judicial estoppel. This issue was not actually litigated and determined by a final order in an earlier proceeding, so neither estoppel doctrine applies. Accordingly, we vacate the circuit court's dismissal and remand for continued proceedings.

## I. BASIC FACTS

The Lankinens owned a parcel of real property in Marquette as tenants by the entireties. They received loans from mBank and its predecessors, secured by four separate mortgages on the property.[1] The Lankinens defaulted on all but the first of the loans and the bank foreclosed against the property. The sheriff sold the property at auction and mBank purchased it for $208,231.76, subject to the first mortgage. The Lankinens had six months to redeem the property, which gave them until September 12, 2009.

---

[1] The loans, in order of priority, were for $310,529, $40,000, $160,000, and $185,122.

On September 8, 2009, the Lankinens entered into a lease agreement with mBank, giving the Lankinens possession of the property until December 7, 2010, with a monthly rental payment of $2,250. mBank contemporaneously granted Lankinen Builders, L.L.C., an entity controlled by Jorma Lankinen, an "option to purchase" the property for $311,000. The entity paid the bank $200,000 for the option. If Lankinen Builders exercises the option, the Lankinens and Mr. Lankinen's corporation will have paid $511,000 plus more than $160,000 in rent to mBank.[2]

On February 2, 2010, Jorma petitioned for bankruptcy in the United States Bankruptcy Court, Western District of Michigan. Kathleen was not a party to the petition. Jorma disclosed the lease and option to purchase in the bankruptcy proceedings, and the option was listed as an asset on the bankruptcy trustee's final report. Jorma did not, however, list any current or potential cause of action concerning the subject property. The trustee found that Jorma's was a "no asset" estate and discharged his debts of over $500,000. The bankruptcy court closed the estate in December 2011.

Six days earlier, the Lankinens had filed suit against mBank in the Marquette Circuit Court, alleging that the bank had clogged their equitable right of redemption. Specifically, they alleged that they redeemed the property by paying mBank $220,250; that the bank "improperly refused to accept the funds as consideration for the redemption;" and that the bank "wrongfully represented to [them] that, in order to remain in possession of the Property, they would have to enter into [the lease and option to purchase]." mBank responded with a motion for summary disposition, asserting that the Lankinens lacked standing to press their claim. The circuit court agreed, ruling that "[p]laintiff lacks standing to bring any action based on the unscheduled, non-abandoned equity interest" in their home.

Jorma immediately returned to the bankruptcy court and successfully moved to reopen the proceedings. He filed an amended asset schedule listing a "potential" economic interest in his home "pursuant to a cause of action . . . for clogging." The bankruptcy court authorized the trustee to sell the claim to the Lankinens for $2,000, with the condition that the trustee would take 50% of any cash settlement or 30% of any awarded equity.

Meanwhile, mBank instituted an eviction action. The Lankinens met the bank's complaint with a "clogging" counterclaim. mBank again sought summary dismissal of the Lankinen's clogging claim, this time on collateral and judicial estoppel grounds. The circuit court described "[t]he basis for the Court[']s dismissal in Lankinen I" as "the lack of listing of the asset and the failure to reopen the bankruptcy." The court conceded, "Both of those have now been accomplished." Even so, the court summarily dismissed the countercomplaint.

Quoting from *Barger v City of Cartersville*, 348 F3d 1289, 1297 (CA 11, 2003), the circuit court found a strong case of bad faith or lack of inadvertence on Jorma's part:

---

[2] It appears that the Lankinens still remain in residence under an extension of this agreement, but began paying $2,500 monthly in 2014.

Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets. As such, Barger's disclosure upon re-opening the bankruptcy estate deserves no favor. [Quotation marks and citations omitted by circuit court.]

The court found that Jorma had asserted an inconsistent position in the bankruptcy court—that the clogging cause of action was not an asset—and the bankruptcy court had adopted that position. That the bankruptcy court later reopened the case and the cause of action was accepted as an asset did not eliminate the existence of the bankruptcy and circuit courts' earlier rulings, the court determined. This was especially true, the court reasoned, as Jorma "had motive for concealment" until called out by the circuit court.

The court also summarily dismissed Kathleen's clogging counterclaim. Even though Kathleen was not a party to the bankruptcy, the court found her claim estopped because she did not appeal the circuit court's earlier ruling.

The Lankinens now appeal.

## II. ANALYSIS

Summary disposition based on the effect of a prior judgment is governed by MCR 2.116(C)(7). We review de novo a circuit court's summary disposition ruling on this ground. *Roby v City of Mt Clemens*, 275 Mich App 26, 28; 731 NW2d 494 (2006). We review de novo the applicability of the legal doctrine of collateral estoppel. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "Judicial estoppel is an equitable doctrine," *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012), the applicability of which we also review de novo. *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 430; 770 NW2d 105 (2009).

To establish that a party is collaterally estopped from raising a claim, the proponent must establish that in a prior action "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Estes*, 481 Mich at 585.

The doctrine of judicial estoppel precludes a party from raising inconsistent positions in successive actions:

> Under this doctrine, a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.

> Under the "prior success" model, the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as

-3-

true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent. [*Paschke v Retool Indus*, 445 Mich 502, 509-510; 519 NW2d 441 (1994) (quotation marks and citation omitted).]

The Lankinens' "clogging" claim stems from an old, "established," and "inviolate" doctrine holding that a mortgagor's equitable right to redeem a mortgage "cannot be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage." *Peugh v Davis*, 96 US (6 Otto) 332, 337; 24 L Ed 775 (1878). Restatement, Property, 3d, Mortgages, §3.1, p 100, comment a describes: "Whatever the language of the clogging concept, courts traditionally have been hostile to clauses and devices that purport to recognize the equity of redemption, but whose practical effect is to nullify or restrict its operation." In this case, the Lankinens asserted that mBank clogged their right to redemption by accepting a partial payment to redeem the property, but then requiring them and Jorma's company to pay for an option to purchase the property and pay monthly rent to remain in residence.

Contrary to the circuit court's conclusion, collateral estoppel does not preclude litigation of the Lankinens' claim in this case. A question of fact essential to the judgment was not actually litigated and determined by a valid and final judgment in a previous action. Although the option to purchase was listed an asset of Jorma's estate, the bankruptcy court did not consider the validity of the option to purchase or lease agreement in that proceeding. The Lankinens filed suit in 2011 to challenge mBank's actions preventing redemption and actually raised the clogging claim. The circuit court ruled that the Lankinens were estopped from raising the clogging claim because Jorma ostensibly took a contradictory position in the bankruptcy court (failing to name the clogging action as an asset) and yet "never sought to reopen the bankruptcy to add these assets." Jorma immediately followed through and did this, nullifying this concern. Yet, the circuit court in the earlier suit never reasoned that the issue had been decided in the bankruptcy court. And the circuit court in the earlier action never reached the merits of the issue. Accordingly, the circuit court in this case erred in relying on collateral estoppel to dismiss Jorma's counterclaim.

Reliance on the doctrine of collateral estoppel to preclude Kathleen's counterclaim is especially troubling. For collateral estoppel to apply, "the same parties" must have had "a full and fair opportunity to litigate the issue." *Estes*, 481 Mich at 585. In both the earlier and the current circuit court actions, the judges used against Kathleen Jorma's failure to list the clogging cause of action as an asset in the bankruptcy proceeding. Kathleen did not file for bankruptcy and was not a party to Jorma's bankruptcy petition. She made no statement about the estate's assets or lack thereof. Accordingly, it was clear legal error to collaterally estop Kathleen from raising her clogging claim.

Moreover, once Jorma reopened the bankruptcy action and listed his clogging suit as a potential asset of the bankruptcy estate, the circuit court's concern that he took a contradictory position in a prior action was erased. Judicial estoppel should not have been applied against either plaintiff.

The circuit court compared this case to *Spohn v Van Dyke Public Schools*, 296 Mich App 470; 822 NW2d 239 (2012). In *Spohn*, the plaintiff allegedly suffered sexual harassment from a coworker from September through December 2008. Spohn and her husband filed a Chapter 13

bankruptcy petition in November 2008. *Id.* at 473. Spohn did not disclose her potential sexual harassment claim against her employer, Van Dyke Public Schools, during the bankruptcy proceedings, despite that she had hired an attorney who was negotiating with the employer and despite that she was quite knowledgeable of the bankruptcy process, having filed three times before. The bankruptcy court eventually dismissed Spohn's case because she was unable to make payments under the Chapter 13 plan. In the meantime, Spohn filed a sexual harassment suit against her employer. *Id.* at 474.

The circuit court summarily dismissed Spohn's sexual harassment suit on judicial estoppel grounds "because of her failure to include this potential lawsuit as an asset in the Chapter 13 bankruptcy proceeding." *Id.* at 475. In affirming the circuit court's judgment, this Court described that judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id.* at 479 (quotation marks and citations omitted). "[I]n the context of bankruptcy proceedings," the *Spohn* Court adopted the test outlined in *White v Wyndham Vacation Ownership, Inc*, 617 F3d 472, 478 (CA 6, 2010):

> to support a finding of judicial estoppel, [a reviewing court] must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence. In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, [the reviewing] court considers whether: (1) [the plaintiff] lacked knowledge of the factual basis of the undisclosed claims; (2) [the plaintiff] had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, [the reviewing court] will look, in particular, at [the plaintiff's] "attempts" to advise the bankruptcy court of [the plaintiff's] omitted claim. [Alterations in original.]

This case is distinguishable from *Spohn* in an important way: Spohn made no "attempt[]" to advise the bankruptcy court of her sexual harassment claim. The bankruptcy court dismissed Spohn's bankruptcy action based on her lack of cooperation in the payment plan. Here, Jorma did "attempt[]" to notify the bankruptcy court of his clogging action. He returned to the bankruptcy court following the circuit court's summary dismissal of his claim and successfully petitioned to reopen the bankruptcy to add his cause of action as an asset. The cause of action then belonged to the bankruptcy estate, 11 USC § 541(a)(1), and the bankruptcy trustee had the authority to pursue the clogging claim on the estate's behalf. 11 USC § 323(b). The trustee also had the power to sell the cause of action. 11 USC § 363(b). Consistent with that power, Jorma negotiated with the bankruptcy trustee to purchase the clogging cause of action. Jorma then stood in the *trustee's* place as owner of the cause of action, not as pre-bankruptcy property owner

Jorma Lankinen. As the "new" owner of the claim, Jorma is now entitled to pursue a decision on the merits.[3]

And again, as Kathleen assumed no position in the bankruptcy court, the circuit court could not hold her judicially estopped from raising a clogging claim following bankruptcy.

We vacate the summary disposition order and remand for continued proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Michael J. Kelly

---

[3] The trustee, attorney Marcia R. Meoli, filed an amicus curiae brief in this Court urging that judicial estoppel does not apply to bar the Lankinens' claim and that the attorney for mBank during the bankruptcy proceeding also bore a duty to disclose the Lankinens' potential cause of action.