# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA T. ESCH personal representative of
ESTATE OF STEPHEN STILES,

Plaintiff-Appellant,

v

NASIM YACOB, MD, JIM MCFADDEN, RN,
MINERVA BOOKER, RN, ESTHER WEST, RN,
CLAIRE EVERSON, LPN, DORIS LEMMEN,
LPN, CORIZON HEALTH INC., DAVID SOVA,
DO, and WEST MICHIGAN URGENT CARE
INC.,

Defendants-Appellees.

UNPUBLISHED
June 13, 2017

No. 332933
Kent Circuit Court
LC No. 16-000859-NH

Before: GADOLA, P.J., and TALBOT, C.J., and GLEICHER, J.

PER CURIAM.

The question before us is whether the plaintiff estate lost the right to bring a state court medical malpractice action when a federal district court denied its motion to amend its § 1983 complaint to add a state-law medical malpractice claim. Defendants vigorously opposed the addition of a state-law malpractice claim, contending that it fundamentally differed from the § 1983 action and would "confuse" the jury. In state court, defendants made a 180-degree turn, arguing that plaintiff's med mal complaint should have been filed in a joint action in the federal court given the similarity of the two claims. The state court accepted this argument and summarily dismissed the state court action. We reverse and remand for continuation of the proceedings.

## I. BACKGROUND

At approximately 4:30 a.m. on May 31, 2011, Stephen Stiles was booked into the Kent County Jail. Stiles informed the deputy that he had a seizure disorder and that the police had confiscated his antiseizure medication, Dilantin, during his arrest. During medical intake, Stiles advised Nurse Jim McFadden that he suffered from epilepsy and grand mal seizures, required medication to control the condition, and had suffered a seizure two weeks earlier. Stiles further reported that he had consumed alcohol that evening. Despite receiving this information,

-1-

McFadden did nothing to prioritize review of Stiles's medical chart. He placed it in a pile of other reports, which sat for several hours without being reviewed by medical personnel.

The jail passed out medication to inmates at 8:00 a.m. However, Stiles did not receive a dose of Dilantin at that time because Nurse Esther West did not contact Stiles's pharmacy until 10:42 a.m. to verify his prescription. West did not thereafter contact the supervising physician for authorization to immediately provide Dilantin to Stiles. Between 2 and 3 p.m., Stiles advised a deputy and LPN Doris Lemmen that he needed his medication and was concerned he may suffer a seizure. At 6:45 p.m., LPN Claire Everson noticed the medication verification in Stiles's file and advised Dr. David Sova. Sova authorized provision of the medication to Stiles. Finally, at 8:10 p.m., Everson and a deputy made rounds to pass out medication to prisoners. They went to Stiles's cell and found him "lying on the top bunk of his bed, unconscious and unresponsive." Stiles had suffered a grand mal seizure and died.

Mary Owens secured court assignment as the personal representative of Stiles's estate. On May 2, 2013, Owens filed suit in federal district court. In an amended complaint, Owens named as defendants Dr. Nasim Yacob, Dr. Sova, McFadden, Nurse Minerva Booker, Everson, and Corizon Health, Inc. Owens elucidated the facts learned during discovery regarding who interacted with Stiles and when, what they knew about Stiles's medical needs, and the timeline of verifying and attempting to provide Stiles's medication. Owens raised claims of deliberate indifference to Stiles's medical needs, gross negligence, and failure to supervise and train claims under 42 USC 1983.

On December 10, 2014, Patricia Esch replaced Owens as personal representative. On February 20, 2015, Esch filed a second amended complaint, adding as defendants Lemmen and West and alleging that Stiles "was denied reasonable and adequate medical care" while in the Kent County Jail, resulting in his death. Specifically, plaintiff noted that the information shared with McFadden and included in Stiles's chart should have raised a red flag with the jail's medical staff. It should have been obvious to the medical defendants, plaintiff contended, that Stiles had a severe medical condition and needed immediate provision of his antiseizure medication. Plaintiff accused the various medical professionals stationed in the jail of acting in willful and wanton disregard of Stiles's constitutional rights and with deliberate indifference toward Stiles's right to receive basic and adequate medical care. The conduct of these individuals was the proximate cause of Stiles's death, plaintiff contended.

Plaintiff subsequently sought leave to amend to add a state-law medical malpractice claim and to add West Michigan Urgent Care (WMUC) as a party defendant. Plaintiff asserted that during discovery, she identified and deposed several nurses and other medical professionals employed by Corizon who worked at the jail. Only after deposing nurses West and Lemmen did plaintiff believe she "had a viable medical malpractice claim." Plaintiff indicated that she filed a notice of intent to file a medical malpractice claim upon defendants, as required by MCL 600.2912(b), on December 15, 2014. She then waited the requisite 182 days to seek leave to amend the complaint. Amendment would not cause undue delay, plaintiff insisted, because all the individuals named in the proposed amendment had already been deposed. Moreover, "Plaintiff's medical malpractice claims emerge from the same nucleus of facts surrounding Plaintiff's claims against the current medical personnel Defendants." As such, "it only makes sense to litigate these claims in a single action." "Likewise," plaintiff continued, "the facts

supporting Plaintiff's basis for adding the medical malpractice claim against the medical personnel Defendants stem from the same incident."

Defendants challenged plaintiff's attempt to add a medical malpractice count. First, defendants attacked the timeliness of the request. The discovery period was about to close. And plaintiff "identif[ied] the possibility of adding a medical malpractice claim a year ago after taking the depositions of" West and Lemmen. Plaintiff then waited four months to file a notice of intent and an additional two months to file a motion to amend the complaint. Defendants raised complaints of undue delay and failure to cure pleading deficiencies through previous amendments. Defendants further contended that amendment would be futile because the statute of limitations had run on the medical malpractice claim.

Of import to this appeal, defendants asserted that they would be prejudiced by the amendment in the following manner:

> If plaintiff is permitted to add a medical malpractice claim against Defendants at this late stage, substantial discovery will need to be revisited, and there will be significant delay. *Medical malpractice is an entirely different claim.* The parties' current retained experts will need to re-review the case and give revised opinions. Furthermore, the parties will need to identify and retain <u>brand new standard of care experts</u>. Some, if not all, expert depositions will have to be completed if the Court decides this Motion. Additionally, the parties will need to retake fact witness depositions. . . . *The case essentially would be starting over from the very beginning in many ways.* [Underlining in original, italics added.]

Defendants further contended that trying the federal § 1983 claim along with the state-law medical malpractice claim "would confuse the jury," because the federal claim "requires a subjective standard that requires considering a Defendant's mental state (as with deliberate indifference and gross negligence claims)" while the state-law medical malpractice claim is judged by an objective standard. Defendants concluded:

> For one jury to balance these three contradictory issues, make separate findings of fact and decisions regarding state of mind for all three claims, and then render monetary values for each separately *is a task of Herculean proportions. No jury is going to be able to competently sort out these competing standards,* and then sort out monetary compensation for each. . . .
>
> The potential for a jury to misapply the malpractice standard to the civil rights claim cannot be emphasized enough. . . . [A]sking a jury to resolve similar claims under two different standards would result in lengthier jury instructions, jury confusion, and inconvenience to the parties. By denying the motion to amend, the potential for jury confusion and complication and extension of discovery will be eliminated, and *Plaintiff can file the malpractice action in a more proper jurisdiction.* [Emphasis added.]

The federal district court denied plaintiff's motion, ruling:

This case has been pending well over two years, during which time Plaintiff has continued to develop her claims, modify her pleadings, and add and delete named Defendants. These issues were addressed with Plaintiff at a May 22, 2014 Pre-Motion Conference and have continued to be a source of concern to the Court, as set forth on the record at a June 16, 2015 status conference. The Court has accommodated Plaintiff's continuing revisions well beyond court-set deadlines for amended pleadings despite Defendant's opposition . . . . On May 21, 2015, the Court denied Defendants' objection to an order of the Magistrate Judge permitting Plaintiff's [sic] to amend her complaint to add Esther West, R.N., and Doris "Kim" Lemmen, L.P.N., as defendants in this lawsuit . . . .

Despite extensive discussion of the case status and Plaintiff's claims as to specific Defendants at a June 16, 2015 status conference, Plaintiff failed to advise the Court of additional anticipated amendments to her claims. Plaintiff states that it was not until after the depositions of nurse West and nurse Lemmen that it appeared to Plaintiff that she had a viable medical malpractice claim and that she had not been dilatory in pursuing her claims, but the Court finds to the contrary. Defendants point out that Plaintiff's assertions fail to account for a delay of some six months in pursuing her malpractice claim following the nurse depositions in August 2014.

Plaintiff also states in support of her instant motion that "this matter is currently only in the midst of discovery" and adding the new malpractice claim will not cause any undue delay . . . . However, at the June 2015 status conference, Plaintiff's counsel represented that fact discovery was essentially done and Plaintiff was ready to proceed forward and with trial. Based on the parties' representations at the status conference, the Court set new deadlines to complete expert discovery and to timely proceed with dispositive motions and trial. The parties completed facilitation on August 17, 2015, and the case did not settle. Again, *as Defendants point out, to add a medical malpractice claim at this late date would require that substantial discovery be revisited, would delay proceeding with dispositive motions and trial, and unduly prejudice Defendants.* [Emphasis added.]

Plaintiff subsequently filed the current action in the Kent Circuit Court on January 14, 2016. She alleged negligence claims (actually medical malpractice) claims against Dr. Yacob, Dr. Sova, McFadden, Booker, West, Everson, Lemmen, Corizon Health, and WMUC. Plaintiff provided detailed accounts of each defendant's interaction with plaintiff, described the applicable standards of care, and alleged facts amounting to breaches of the applicable standard. The theme of the complaint was that Stiles provided sufficient information regarding his medical needs such that defendants should have appreciated the severity of his condition and his immediate need for life-sustaining antiseizure medication. Yet defendants treated Stiles as any other prisoner and ignored his medical needs for several hours. Plaintiff alleged that because of this delay Stiles suffered a grand mal seizure and died.

In lieu of an answer, defendants sought summary disposition pursuant to MCR 2.116(C)(6) and (7). Under subrule (6), defendants contended that summary disposition was appropriate because another action was pending involving the same parties in federal court. That

-4-

the parties in the state and federal actions were not identical (given the naming of WMUC) "was of no consequence," defendants insisted, because the plaintiff and the issues were the same. In relation to the issues raised, defendants relied upon *JD Candler Roofing Co, Inc v Dickson*, 149 Mich App 593; 386 NW2d 605 (1985), for the proposition that a successive case must be dismissed when "a similar case was pending" in another court, and *Chapple v Nat'l Hardwood Co*, 234 Mich 296, 298; 207 NW 888 (1926), to support that a successive action may not be maintained when "the same matters are involved in all the cases." Finally, defendants cited an unpublished Court of Appeals opinion supporting dismissal under (C)(6) "where the plaintiff failed to assert a claim in a prior suit." Defendants contended, "The parties and the claims are *substantially the same* in this case as those in the federal lawsuit." (Emphasis added.)

In relation to subrule (7), defendants noted that a plaintiff must bring a medical malpractice claim within two years of the claim's accrual or within two years of a personal representative receiving letters of authority, but only up to three years after the claim's original statute of limitations had run. Defendants insisted that the successor personal representative did not get an additional extension to file the action.

Plaintiff retorted that the federal § 1983 deliberate indifference claim was "totally different" than the state-law medical malpractice action. She argued that the federal district court implicitly recognized that the two actions were completely different when it denied her motion to amend the complaint to add a med mal action. Specifically, the court found that the additional claim would require " 'substantial discovery' and would delay the federal proceedings." Plaintiff further noted that a med mal claim "involves questions of reasonableness of the conduct of a defendant that lie beyond the common knowledge and experience of lay jurors," i.e. the professional standard of care expected of various medical providers. To prove a § 1983 claim based on deprivation of medical treatment, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." A lay juror can determine this as a medical need is deemed "serious if it so obvious that even a layperson would recognize the necessity of medical attention." A jury can also determine whether the defendants exhibited "wanton disregard" and unreasonable delay. Moreover, the state claim is judged on an objective standard, while the federal is a subjective intent matter. Placing both matters before the same jury would have led to confusion. Plaintiff also emphasized that the dangers of allowing two actions to proceed, such as having an issue become moot based on res judicata, did not exist in this case because the federal court had already refused to take jurisdiction and resolve the medical malpractice claim.

Plaintiff asserted that she had filed the medical malpractice action within the statutory limitations period as well. Esch was appointed personal representative on December 10, 2014 and had until December 10, 2016 to file suit under the wrongful death saving statute.

At the motion hearing, defense counsel asserted, "There has been action pending in federal court since 2013 regarding *the same incident, the same operative facts*, and nearly identical parties." (Emphasis added.) She continued, "The federal action is under 42 USC 1983 alleging a civil rights violation based *on alleged deliberate indifference to serious medical needs, and this being a medical malpractice case, the issues are very similar, although the standards, the legal standards are different.*" (Emphasis added.) The court inquired whether defendants' conflicting arguments in federal court precluded their current claims, but counsel did not answer

the question. Instead, she iterated that "[t]he bigger issue in the federal case" was that plaintiff waited so long to attempt to bring the medical malpractice claim and discovery was almost complete. Counsel then segued into the statute of limitations argument for dismissal.

Plaintiff replied that she had not improperly delayed in raising the med mal claim. The delay in attempting to raise the claim was caused by defendants' failure to "divulge the identities of nurses Esther West and Doris Lemmen" until after the two-year medical malpractice statute of limitations had run. In that timeframe, the estate also had to secure a replacement personal representative. Plaintiff further retorted:

> [A]s you pointed out during sister counsel's argument, the defendants have unclean hands here because they have made the exact opposite arguments in opposing our motion to amend the complaint in the Western District of Michigan. They should not now be heard to argue that plaintiff can't file in state court because of the pending 1983 action is an identical claim. There they said they're completely different claims, and that is in fact the case, and that was acknowledged by the Western district. The Court held there that . . . "To add a medical malpractice claim at this late date would require that substantial discovery be revisited, would delay proceeding . . . with dispositive motions in trial, and would unduly prejudice defendants." . . . And if the med mal [and] the 1983 claims were substantially the same cause of action or had substantially the same underlying operative facts that could not have been the basis for the Western District's ruling. The Western District adopted the argument of the defendants to say that these are totally different claims, and yet now that we're here in what they termed in their opposition to our motion to amend in the more proper for[u]m, now they're talking [taking?] the proposition that no, they are in fact the same claim, and we should be precluded under c(6) [sic].

Plaintiff then contended that the federal and state-law actions required "[t]otally different proofs," making separate actions in separate courts appropriate.

Defense counsel responded to plaintiff's claim that defendants belatedly produced West and Lemmen. The federal court found that plaintiff failed to account for the six-month delay following the deposition of these witnesses before filing a motion to amend. In relation to the claim that defendants should be precluded from arguing that the state and federal actions were the same, counsel asserted:

> And *the claim that is brought in this case is different from the claim in the federal case in that for discovery purposes things are different, but that doesn't mean that all claims should not be brought in one case at one time so things can be efficient and the parties not prejudiced by excessive time and attorney fees and involvements in two different lawsuits.*
>
> I'd also like to point out that the parties in the federal case all have multiple expert witnesses who are already retained and have given significant opinions, so there is a lot of similarity in the two cases. But really what it comes down to under (C)(6) is that *the operative facts are the same, and it's*

*substantially the same cause of action. It's just a different label. It's a State cause of action versus a federal cause of action. That is the only difference.* [Emphasis added.]

The circuit court ultimately dismissed plaintiff's medical malpractice action pursuant to MCR 2.116(C)(6). In resolving the motion, the court noted that "the primary question is not whether [the two actions] involve the same theories, but whether the '[r]esolution of either action will require examination of the same operative facts.' " The court ruled:

> In this case, resolution of Plaintiff's medical malpractice claims will require examination of the same operative facts as those required for resolution of the 1983 claims in the federal case. This is evidenced by the fact that the factual allegations are essentially identical in both the Complaint in this case and in the Second Amended Complaint in the federal case. Additionally, Plaintiff's own Motion for Leave to Amend in the federal case states that both the medical malpractice claims and the 1983 claims "stem from the same incident" and "arise from the same common nucleus of facts." Since both the medical malpractice claims and the 1983 claims will require examination of the same operative facts, they do constitute the "same claims" for purposes of MCR 2.116(C)(6).

The circuit court also rejected plaintiff's interpretation of the federal court's order denying the motion to amend the complaint:

> Plaintiff argues that the District Court's Order denying the Motion for Leave to Amend implies that the medical malpractice claims cannot be based on the same operative facts as the 1983 claims. The District Court's Order states, in relevant part, "to add a medical malpractice claim at this late date would require that substantial discovery be revisited, would delay proceeding with dispositive motions and trial, and unduly prejudice Defendants." Plaintiff maintains that the District Court's statement that substantial discovery would need to be revisited shows that the claims require separate factual developments. However, while medical malpractice and deliberate indifference to serious medical needs have different *legal* standards, the factual basis for *all* of the claims at issue is the sequence of events prior to Mr. Stiles's death. Therefore, even though additional depositions would almost surely be required in regards to the standard of care applicable to each Defendant, the resolution of all the claims still requires examination of the same operative facts. [Emphasis in original.]

The circuit court also rejected plaintiff's claim that defendants should be barred from raising contradictory arguments from those raised in the federal court. And the court accused plaintiff of raising conflicting arguments. Ultimately, the court concluded:

> Here, as explained previously, the claims in this case and those in the federal case are not separate and distinct because they are all based on the same sequence of events and operative facts, namely, Defendants' care of Mr. Stiles prior to his death. Additionally, the District Court's decision to deny the Motion for Leave to Amend was not based on Defendants' arguments regarding jury

confusion and "a more proper jurisdiction," i.e., the District Court declining to exercise supplemental jurisdiction. The District Court's Order makes it abundantly clear that it denied the Motion for Leave to Amend due solely to Plaintiff's dilatory actions in raising the medical malpractice claims.

Given the circuit court's resolution on (C)(6) grounds, it did not consider defendants' request for summary disposition based on the expiration of the statute of limitations.

## II. SUMMARY DISPOSITION BASED ON PENDING FEDERAL CASE

Plaintiff challenges the circuit court's dismissal of her action based on the pending federal case. We review de novo a circuit court's summary dismissal of a plaintiff's action under MCR 2.116(C)(6). *Fast Air, Inc v Knight*, 235 Mich App 541, 543; 599 NW2d 489 (1999). MCR 2.116(C)(6) provides for the summary dismissal of an action if "[a]nother action has been initiated between the same parties involving the same claim." "The court rule is a codification of the former plea of abatement by prior action. Abatement protects parties from harassment of new suits filed by the same plaintiffs involving the same questions as those in pending litigation." *Ross v Onyx Oil & Gas Corp*, 128 Mich App 660, 666; 341 NW2d 783 (1983) (citations omitted). "If this were not so[,] repeated suits involving useless expenditures of money and energy could be daily launched by a litigious plaintiff involving one and the same matter." *Chapple v Nat'l Hardwood Co*, 234 Mich 296, 298; 207 NW 888 (1926).

## A. JUDICIAL ESTOPPEL

Defendants are judicially estopped from arguing in support of its summary disposition motion the similarity of the federal and state claims in this case when they previously went to great lengths to describe the two actions as completely different. Judicial estoppel precludes a party "from maintaining a position inconsistent with one he had asserted under oath in an earlier judicial proceeding." *Paschke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994). The doctrine is "[s]ometimes described as the doctrine against the assertion of inconsistent positions" and is "used by the courts in impeding those litigants who would otherwise play 'fast and loose' with the legal system." *Id*.

> Judicial estoppel . . . is intended to protect the integrity of the judicial process. . . . The essential function of judicial estoppel is to prevent intentional inconsistency; the object of the rule is to protect the judiciary, as an institution, from the perversion of judicial machinery. . . . Judicial estoppel addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another tribunal. If the second tribunal adopted the party's inconsistent position, then at least one court has probably been misled. [*Edwards v Aetna Life Ins Co*, 690 F2d 595, 598-599 (CA 6, 1982).]

Michigan courts have adopted "the 'prior success' model of judicial estoppel." "Under this doctrine, a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." *Paschke*, 445 Mich at 509-510 (emphasis in original). In order to support estoppel, "there must be some indication that the court in the earlier proceeding accepted that party's position as true."

*Id*. at 510. "The prior success model, however, does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 480; 822 NW2d 239 (2012) (quotation marks and citation omitted).

In response to plaintiff's motion to add a med mal claim to the federal complaint, defendants specifically and repeatedly argued that the federal and state claims were totally different and that trying the federal and state claims together "would confuse the jury." Defendants emphasized, "Plaintiff can file the malpractice action in a more proper jurisdiction." Although the federal district court did not specifically indicate that the federal and state claims were so different that the state-law claim should be dismissed, plaintiff accurately notes that this finding is implied. The court reasoned, "as Defendants point out, to add a medical malpractice claim at this late date would require that substantial discovery be revisited, would delay proceeding with dispositive motions, and unduly prejudice Defendants."

Plaintiff took defendants' advice and "file[d] the malpractice action in a more proper jurisdiction." But defendants completely changed course and argued for the dismissal of the state action under MCR 2.116(C)(6) because the federal and state claims were "substantially the same," were based on "the same incident, the same operative facts," and involved "very similar" issues, although "the legal standards are different." Rather than promoting the differences between the two actions as they had done in federal court, defendants contended, "it's substantially the same cause of action. It's just a different label. It's a State cause of action versus a federal cause of action. That is the only difference." Defendants changed positions after successfully arguing for the federal court's denial of the motion to add a state-law med mal claim. Defendants are thereby estopped from arguing the similarity of the federal and state claims.

### B. SUMMARY DISPOSITION INAPPROPRIATE

In any event, we conclude that the circuit court fundamentally erred in dismissing plaintiff's state-law medical malpractice action. The circuit court relied on *JD Candler Roofing Co*, 149 Mich App 593, in making its decision. According to *JD Candler*, 149 Mich App at 598, the court rule "does not require that all the parties and all the issues be identical."[1] When considering whether two suits involve the same claims, the court must consider whether the actions are " 'based on the same or substantially the same cause of action.' " *Id*., quoting *Ross*, 128 Mich App at 666. In *JD Candler*, 149 Mich App at 600-601 (emphasis added), summary disposition of a second suit was proper because "the factual *and legal issues* to be litigated" in both actions were "the same." "[T]he same relief must be sought" in both actions to warrant summary dismissal of the second suit, as well. *Ross*, 123 Mich App at 666.

Because *JD Candler*, and the *Ross* case on which it relies, were decided before November 1, 1990, they are not binding on this Court. MCR 7.215(J)(1). Their definition of the

---

[1] Accordingly, plaintiff's claim that summary disposition based on (C)(6) was inappropriate as to WMUC as it was not a defendant in the federal action is without merit.

phrase "the same claim" in MCR 2.116(C)(6) also does not comport with Michigan Supreme Court precedent defining the word "the." In *Robison v Detroit*, 462 Mich 439, 461; 613 NW2d 307 (2000), quoting *Hagerman v Gencorp Auto*, 457 Mich 720, 753-754; 579 NW2d 347 (1998), the Court held that "the" is a " ' "definite article" . . . as opposed to the indefinite or generalizing force of the indefinite article a or an[.]' " Using this definition to interpret the phrase "the proximate cause" in MCL 691.1407(2)(c) of the governmental immunity act, the Court reasoned: "Further, recognizing that 'the' is a definite article, and 'cause' is a singular noun, it is clear that the phrase 'the proximate cause' contemplates *one* cause." *Robinson*, 462 Mich at 462 (emphasis in original). According to this precedent, the phrase "the same claim" must be read narrowly as the one and only same claim. To merit dismissal under MCR 2.116(C)(6), the claim in the pending and current actions must actually be the same and not merely "substantially the same."

When the phrase "the same claim" is properly interpreted, it becomes clear that the circuit court erred in summarily dismissing plaintiff's medical malpractice action. Medical malpractice is not "*the* same claim" as § 1983 deliberate indifference; they are legally distinct. As described by the Court of Appeals for the Sixth Circuit:

> An inmate may bring a § 1983 claim under the Eighth Amendment only where he can show that a state official acted with "deliberate indifference" to his "medical needs." "Deliberate indifference" requires more than mere mistreatment or negligence; it requires the plaintiff to show that the injury was "objectively" serious and that the defendant "subjectively" ignored the inmate's medical needs. [*Gibson v Moskowitz*, 523 F3d 657, 661-662 (CA 6, 2008) (citations omitted).]

To establish a medical malpractice claim in Michigan, however,

> a plaintiff must establish four elements: (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. These common-law elements have been codified in MCL 600.2912a, which requires a plaintiff alleging medical malpractice to show that
>
> > the defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of defendant failing to provide that standard, the plaintiff suffered an injury. [*Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).]

The United States Supreme Court has recognized the difference between medical malpractice and constitutional challenges to the adequacy of medical treatment while incarcerated:

[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. [*Estelle v Gamble*, 429 US 97, 105-106; 97 S Ct 285; 50 L Ed 2d 251 (1976).]

The elements of medical malpractice and § 1983 deliberate indifference do not correspond. Accordingly, they are not "*the* same claim" and summary disposition was inappropriate.

### III. STATUTE OF LIMITATIONS

Defendants' alternate claim, that summary disposition was appropriate based on the statute of limitations, is also without merit.

> Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations. Generally, the burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute. . . . Although generally not required to do so, a party moving for summary disposition under MCR 2.116(C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider. . . . If there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a matter of law for the court to determine. . . .

> In reviewing a motion under subrule (C)(7), the circuit court "must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor. *Diehl v Danuloff*, 242 Mich App 120, 123; 618 NW2d 83 (2000).

> We also review de novo the question whether a claim is barred by the statute of limitations and the issue of the proper interpretation and applicability of the limitations periods. See *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006); *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 709; 742 NW2d 399 (2007). [*Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227-228; 859 NW2d 723 (2014).]

Stiles died on May 31, 2011. The wrongful death savings provision applicable to a claim filed by his estate must be determined based on the date of his death. On May 31, 2011, MCL 600.5852 provided:

If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law *may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.* But an action shall not be brought under this provision unless the personal representative commences it *within 3 years after the period of limitations has run.* [Emphasis added.]

Effective March 28, 2013, 2012 PA 609 amended the statute to provide:

(1) If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action that survives by law *may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.*

(2) If the action that survives by law is an action alleging *medical malpractice, the 2-year period under subsection (1) runs from the date letters of authority are issued to the first personal representative of an estate. Except as provided in subsection (3), the issuance of subsequent letters of authority does not enlarge the time within which the action may be commenced.*

(3) If a personal representative dies or is adjudged by a court to be legally incapacitated within 2 years after his or her letters are issued, the successor personal representative may commence an action alleging medical malpractice that survives by law within 1 year after the personal representative died or was adjudged by a court to be legally incapacitated.

(4) Notwithstanding subsections (1) to (3), an action shall not be commenced under this section later than 3 years after the period of limitations has run. [Emphasis added.]

The Michigan Supreme Court interpreted the applicable version of MCL 600.5852 in *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29; 658 NW2d 139 (2003). In *Eggleston*, the Court of Appeals held that even based on the pre-amendment statutory language, a wrongful death or medical malpractice action must be brought within two years of the original personal representative receiving his or her letters of authority. *Id*. at 32. The Supreme Court held:

The Court relied on this misquotation in holding that a personal representative must bring an action within two years after the initial letters of authority are issued to the first personal representative. This is not, however, what the statute says. The statute simply provides that an action may be commenced by the personal representative "at any time within 2 years after letters

of authority are issued although the period of limitations has run." . . . The language adopted by the Legislature clearly allows an action to be brought within two years after letters of authority are issued to the personal representative. The statute does not provide that the two-year period is measured from the date letters of authority are issued to the initial personal representative.

Plaintiff was "the personal representative" of the estate and filed the complaint "within 2 years after letters of authority [were] issued," and "within 3 years after the period of limitations had run." MCL 600.5852. The action was therefore timely. [*Id.* at 33.]

This case is no different than *Eggleston*. A successor personal representative was appointed on December 10, 2014. That personal representative had two years after her letters of authority issued or three years after the original limitations period ran to file the medical malpractice complaint. The three-year period ended May 31, 2016. Esch had until that date to file the medical malpractice action. She did so. The claim was timely and summary disposition would be improper.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Michael F. Gadola
/s/ Michael J. Talbot
/s/ Elizabeth L. Gleicher

-13-