*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF KEITH F. READUS, by KEITH J.
GARDNER, Personal Representative,

UNPUBLISHED
February 14, 2019

Plaintiff-Appellant,

v

No. 338273
Wayne Circuit Court
LC No. 15-011745-NZ

CHRYSLER GROUP, LLC, and FCA US, LLC,

Defendants-Appellees.

Before: K.F. KELLY, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(10) and denying plaintiff's motion for summary disposition under MCR 2.116(I)(2). We affirm.

## I. FACTS

The present matter arises from decedent Keith F. Readus' tragic death on September 20, 2012. Since 1994, decedent was employed by defendants at an automobile assembly plant located in Detroit, Michigan. On the morning of September 20, 2012, while decedent was at work, he was attacked and fatally stabbed by coworker Jeffrey L. Hunt. After stabbing decedent, Hunt fled in his vehicle and committed suicide a short time later.

Plaintiff, decedent's son and personal representative, initiated the present action on September 9, 2015, alleging that defendants were aware of Hunt's history of violent conduct, which included making threats of physical harm against coworkers, carrying weapons within the workplace, and being arrested and convicted after physically assaulting another individual in 1997. Based on allegations that defendants failed to maintain a safe work environment by willfully disregarding this knowledge, plaintiff asserted claims of negligent hire or rehire of Hunt and of intentional tort, an exception to the exclusive remedy provision of the Worker's Disability Compensation Act of 1969 (WDCA), MCL 418.131(1).

Defendants filed a motion for summary disposition under MCR 2.116(C)(10), denying they were aware either of Hunt's propensity toward violence generally or of his 1997 assault and subsequent conviction specifically. Defendants contended that Hunt's employment record contained no complaints by other employees to management regarding Hunt's behavior. Rather, defendants maintained that plaintiff's claims were premised on rumors and hearsay learned after decedent's death. In response, plaintiff filed a motion for summary disposition under MCR 2.116(I)(2) on the ground of defendants' purported spoliation of evidence. Plaintiff sought summary disposition as a sanction against defendants for their alleged "sanitization" of Hunt's employment record undertaken in an effort to deny knowledge of Hunt's history of violence.

During a hearing held on March 30, 2017, the trial court delivered on the record its opinion granting defendants' motion for summary disposition and denying plaintiff's motion for summary disposition. Specifically, the trial court found there to be no evidence whatsoever supporting plaintiff's allegation that defendants destroyed Hunt's employment record. With respect to Hunt's 1997 assault, the trial court stated that this incident had little, if any, probative value regarding Hunt's character or events that transpired 15 years later. Finally, the trial court determined that the remainder of the evidence relied upon by plaintiff amounted to mere rumors and speculation that were insufficient to sustain a factual question. Plaintiff now appeals.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision to grant or deny a motion for summary disposition de novo. *Lockport Twp v City of Three Rivers*, 319 Mich App 516, 519; 902 NW2d 430 (2017). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is appropriately granted if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). In deciding a motion under this subsection, courts are to consider the "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A genuine issue of material fact exists when, drawing all reasonable inferences in favor of the nonmoving party, the record leaves open an issue upon which reasonable minds might differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013). In contrast, summary disposition is appropriately granted in favor of the opposing party under MCR 2.116(I)(2) "when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Sherry v East Suburban Football League*, 292 Mich App 23, 34; 807 NW2d 859 (2011).

## III. ANALYSIS

### A. NEGLIGENCE

As a preliminary matter, plaintiff contends that the trial court erred in dismissing his negligence claim, as defendants are judicially estopped from advancing two opposing positions within the same dispute. In the instant litigation, defendants sought summary disposition on plaintiff's negligence claim on the ground that it is preempted by the exclusive remedy provision of the WDCA. However, in response to plaintiff's claim before the Worker's Compensation Agency, defendants asserted that plaintiff was not entitled to benefits under the WDCA because

decedent's death did not arise out of his employment. Accordingly, plaintiff maintains that dismissal of his negligence claim was in error. We disagree.

This Court reviews for clear error a trial court's findings of fact relative to the doctrine of judicial estoppel and reviews de novo determinations regarding application of the doctrine.[1] *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012). Judicial estoppel is an equitable doctrine that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (quotation marks and citation omitted). Michigan has adopted the "prior success" model of judicial estoppel, under which only "a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." *Paschke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994) (quotation marks and citations omitted). A party's mere assertion of inconsistent positions is insufficient under this model to invoke judicial estoppel. *Id*. at 510. Rather, it must be apparent that the court in the earlier proceeding accepted the party's position as true. *Id*.

In response to plaintiff's claim for benefits initiated before the Worker's Compensation Agency, defendants challenged plaintiff's entitlement to benefits under the WDCA on the ground that decedent's death was not a result of his employment. Plaintiff does not contest defendants' assertion that he did not pursue the workers' compensation claim further by seeking a hearing or a final determination by the agency regarding benefit entitlement. Therefore, even assuming that defendants' position before the Worker's Compensation Agency was wholly inconsistent with its position before the trial court, the agency never determined plaintiff's entitlement to benefits under the WDCA, nor did it accept defendants' position as true. Thus, it cannot be said that defendants prevailed on this position such that judicial estoppel prevents them from now asserting that the WDCA preempts plaintiff's negligence claim.

Having determined that defendants are not estopped from arguing that plaintiff's negligence claim is barred under the exclusive remedy provision of the WDCA, we now turn to whether the trial court properly dismissed this claim. In dismissing plaintiff's negligence claim, the trial court did not expressly explain its reasoning on the record. However, because defendants raised the WDCA preemption argument before the trial court, we are not foreclosed from reviewing this issue on appeal. See *Loutts v Loutts*, 298 Mich App 21, 23-24; 826 NW2d 152 (2012).

---

[1] Though plaintiff did not expressly argue before the trial court that judicial estoppel applied, he highlighted the inconsistency between defendants' position advanced before the Worker's Compensation Agency and their position advanced before the trial court. Although this issue was not addressed by the trial court, we treat it as preserved and are not precluded from reviewing it on appeal. See *Loutts v Loutts*, 298 Mich App 21, 23-24; 826 NW2d 152 (2012) (holding that a claim raised before the trial court and pursued on appeal is preserved for appellate review).

An employee's sole remedy against an employer for any injury sustained while on the job is provided under the WDCA, except for injuries arising from an employer's intentional tort. *Gray v Morley*, 460 Mich 738, 741; 596 NW2d 922 (1999); see also MCL 418.131(1) ("The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease."). Indeed, "[t]he WDCA substitutes statutory compensation for common-law tort liability founded upon an employer's negligence in failing to maintain a safe working environment." *Walrath v Witzenmnn USA LLC*, 320 Mich App 125, 132; 904 NW2d 875 (2017) (quotation marks and citation omitted). Because the instant case involves decedent's injury and resulting death within the workplace, plaintiff's exclusive remedy against defendants is provided under the WDCA unless he can demonstrate an intentional tort. Accordingly, we affirm the trial court's dismissal of plaintiff's negligence claim.

## B. INTENTIONAL TORT

Plaintiff next contends that the trial court erred in granting summary disposition in favor of defendants because plaintiff presented evidence sufficient to raise a question of fact regarding the intentional tort exception of the WDCA. Again, we disagree.

As set forth under MCL 418.131(1), the WDCA provides an employee's exclusive remedy against an employer for personal injury or occupational disease arising out of and in the course of employment. However, this subsection provides for an exception to this exclusive remedy in the case of an intentional tort:

> The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. *An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.* The issue of whether an act was an intentional tort shall be a question of law for the court. [MCL 418.131(1) (emphasis added).]

Our Supreme Court has interpreted "actual knowledge" as requiring more than constructive, implied, or imputed knowledge such that it is insufficient for a plaintiff to allege that the employer "should have known, or had reason to believe, that injury was certain to occur." *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 173; 551 NW2d 132 (1996). Rather, an employer has actual knowledge if a "supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do." *Id*. at 174. Likewise, the requirement that an injury is "certain to occur" has been deemed "an extremely high standard." *Id*. A plaintiff must demonstrate that the employer knew that injury was "sure and inevitable" and not merely likely based on the laws of probability. *Id*. Finally, an employer's "willful disregard" of this knowledge of certain injury must amount to "more than mere negligence." *Id*. at 179.

### 1. THE 1997 ASSAULT

Plaintiff first contends that defendants had actual knowledge of Hunt's violent tendencies and the threat that he posed based on his arrest and conviction for assault in 1997. However,

plaintiff has adduced no evidence establishing that defendants were aware of either Hunt's assault or his subsequent conviction. The evidence demonstrates that Hunt was hired by defendants in 1994. On February 7, 1997, Hunt was arrested and charged with assault with intent to murder after he attacked an acquaintance with a screwdriver in Clinton Township, Michigan. Hunt posted bond and was released on February 8, 1997, and was scheduled to appear for arraignment on February 10, 1997. Over a year later, on May 5, 1998, Hunt pleaded guilty to felony assault with intent to do bodily harm less than murder and was sentenced to two years' probation with the first 12 months to be served in the Macomb County jail.

Hunt's employment record shows no break in employment but does indicate three unexcused absences beginning on February 7, 1997, corresponding with the dates of Hunt's arrest and arraignment. Due to the unexcused absences, defendants sent Hunt a "five-day letter" on February 10, 1997, instructing him to report to work on or before February 17, 1997, or face termination.[2] Hunt's employment record reflects that he returned to work by this deadline, as there is no indication of a termination or any further absence during this timeframe. On May 4, 1998, the day before Hunt's plea and sentencing hearing, Hunt's employment record reflects that he went on sick leave until he was reinstated on May 15, 1998. Again, there is no indication in Hunt's employment record that he was terminated at this time, nor is there any documentation that Hunt participated in a work release program. It is not defendants' policy to extend leaves of absence to employees who have been incarcerated, and any work release program would likely have required defendants to provide a letter verifying Hunt's employment. Because no such letter appeared in Hunt's employment record, there is an utter lack of documentary evidence demonstrating that defendants had any knowledge of the assault or of Hunt's subsequent conviction.

When questioned regarding defendants' knowledge of Hunt's 1997 assault and later conviction, Kenneth Morrast, a union steward and committeeman employed by defendants, denied knowledge of the incident and opined that it would be possible for an employee to commit a felony without defendants' knowledge and keep their job. Specifically, Morrast acknowledged that Hunt could have forged documents verifying an illness and returned to work "without anyone knowing" the true circumstances. Accordingly, in light of the lack of discharge or employment verification for a work release program, Morrast was uncertain that defendants' management in 1997 would have known about Hunt's conviction. For the same reasons, Jeffrey Guernsey, a human resources and labor relations supervisor employed by defendants, likewise

---

[2] Such notices are referred to as "five-day letters" because they instruct employees to report to work within five working days. Union steward and committeeman Kenneth Morrast suggested during his deposition that defendants may have "jumped the gun" by sending Hunt a five-day letter after only three days of unexcused absence because they were aware of Hunt's arrest. However, Morrast admitted that he was speculating and had "no clue" why defendants sent the five-day letter to Hunt. "Speculation and conjecture are insufficient to create an issue of material fact." *Ghaffari v Truner Constr Co*, 268 Mich App 460, 464; 708 NW2d 448 (2005). Accordingly, we find plaintiff's argument that defendants issued the letter early because they were aware of Hunt's assault and resulting charges to be without merit.

believed that defendants were unaware of the 1997 incident.[3] The evidence thus indicates that defendants did not have actual notice of Hunt's 1997 assault. Plaintiff offers no evidence in rebuttal but rather contends that defendants removed from Hunt's employment record any evidence regarding this assault and resulting conviction, an argument we address in connection with plaintiff's spoliation of evidence claim.

Furthermore, even if we were to assume that defendants were aware of Hunt's 1997 assault and resulting conviction, such knowledge would not have enabled them to predict that decedent's death in 2012 was certain to occur. The two incidents were entirely unrelated and were separated by a period of 15 years. Although in both cases Hunt used a weapon to stab the victims, the 1997 assault took place outside of work and involved a purported "known enemy," while the attack on decedent was apparently unprovoked and took place inside the workplace during work hours. As stated by our Supreme Court, "just because something has happened before on occasion does not mean that it is certain to occur again." *Travis*, 453 Mich at 174. The mere fact that Hunt once committed a serious physical assault 15 years earlier did not render his subsequent attack on decedent certain to occur.

## 2. HUNT'S REPUTATION

Plaintiff next contends that defendants had actual notice of Hunt's propensity for violence based on his general reputation for having a "hot temper," for carrying weapons in the workplace, and for engaging in violent and threatening behavior. The evidence plaintiff relies upon, however, amounts to nothing more than hearsay and speculation premised on rumors circulated after decedent's death. Plaintiff admitted that he was unfamiliar with and had never heard of Hunt before decedent's death. In the aftermath of decedent's death, several of decedent's friends and coworkers related to plaintiff stories they had overheard concerning threats and altercations between Hunt and other unnamed employees. All of defendants' employees who were deposed, however, denied that they were ever personally threatened or assaulted by Hunt and further denied witnessing Hunt threaten or assault anyone else.

The parties deposed Vance Frison, decedent's cousin who worked at the assembly plant and witnessed the incident resulting in decedent's death. Frison stated that he did not personally know Hunt and engaged in only minimal, passing conversation with him. Approximately one month before the incident, decedent informed Frison that he had a physical altercation with Hunt in the workplace gym, though decedent did not specify the cause or indicate that he had reported it to management. Nor did Frison report the altercation. After decedent's death, Frison heard multiple rumors regarding Hunt, including that he carried weapons in the workplace, that he had once bitten off someone's finger during a dispute, and that he had once had an altercation with another employee in the workplace parking lot.[4] However, Frison had no personal knowledge of

---

[3] Guernsey was not personally aware of the 1997 assault. He began working at the assembly plant in 2009.

[4] The parties deposed James Barnette, the individual purportedly involved in the parking lot altercation with Hunt. Barnette denied either being familiar with or having any altercation with Hunt.

this information and admitted that he could neither recall who shared these secondhand stories with him nor confirm whether they were true.

Morrast, who at one time served as Hunt's union representative, was also questioned regarding Hunt's reputation and admitted that he was generally known to have a "hot temper" that led him to become involved in disputes. With respect to Hunt's criminal record outside the workplace, Morrast was unaware of the 1997 assault and conviction, but he admitted to hearing that Hunt "had been in trouble with the law before, that he had been in altercations outside the plant with people." Within the workplace, Morrast heard that Hunt made threats against other employees and was involved in physical altercations; however, this information amounts to hearsay, as Morrast stated he never personally witnessed Hunt exhibit any threatening or violent behavior and was uncertain whether the rumors were true. To the contrary, prior to decedent's death, Morrast had not heard that Hunt carried weapons in the workplace or that Hunt was involved in any physical altercation with decedent. To Morrast's knowledge, Hunt was not the subject of any grievances at the assembly plant, nor was Hunt ever discussed during Local Response Team (LRT) meetings regarding workplace violence and threats. Overall, Morrast stated he did not know that Hunt was capable of violent behavior rising to the level of murder.

Finally, Guernsey stated that he had never heard of Hunt before the incident resulting in decedent's death. After reviewing Hunt's employment record, Guernsey stated his disciplinary history was limited to three instances of refusing to wear safety apparel. Guernsey further confirmed that no concerns regarding Hunt were ever raised at LRT meetings and that he was unaware of any employee complaints regarding Hunt being raised to management.

None of the testimony describing Hunt's proclivity toward violence is premised on personal knowledge, as none of the witnesses personally observed Hunt exhibit any threatening or violent behavior. Nor could these witnesses identify the employees who were purportedly threatened or assaulted by Hunt. Plaintiff has offered no admissible evidence substantiating these rumors, many of which arose only *after* decedent's death. "Opinions, conclusionary denials, unsworn averments, and inadmissible hearsay do not satisfy [MCR 2.116(G)(3)'s requirement that motions for summary disposition brought under MCR 2.116(C)(10) be supported by evidence]; disputed fact (or the lack of it) must be established by admissible evidence." *SSC Assoc Ltd Partnership v Gen Retirement Sys of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991). Thus, plaintiff may not rely on this inadmissible hearsay to demonstrate the existence of a question of disputed fact regarding defendants' actual knowledge that Hunt presented a threat.

The remaining admissible evidence fails to raise a question of fact regarding whether defendants had actual knowledge that Hunt presented a security threat or that decedent's death was certain to occur. No employee testified that he reported Hunt's alleged threats or physical violence to a supervisor or to management. According to Frison, decedent did not indicate that he reported his dispute with Hunt in the workplace gym to management, nor did Frison report the incident. Likewise, Morrast and Guernsey confirmed that, in Hunt's 18 years of employment with defendants, they never personally received or were made aware of any employee complaints regarding Hunt's behavior. Although Morrast acknowledged in his testimony that he was generally aware of Hunt's reputation for threatening behavior, he stated that he was uncertain whether this reputation had any basis in fact.

Furthermore, even if defendants had been aware that Hunt made threats or was physically violent toward other employees, this knowledge alone would not have enabled them to predict with any certainty that Hunt would choose to launch an unprovoked and fatal attack on decedent. In spite of the inadmissible rumors and hearsay regarding Hunt's violence, and although Hunt was employed by defendants for approximately 18 years, plaintiff has presented no admissible evidence demonstrating that Hunt ever severely injured or killed another employee. Nor has plaintiff presented any evidence that Hunt ever stated a specific intent to kill decedent. Although decedent had an encounter with Hunt approximately one month before his death, there is no evidence that this incident was part of an ongoing dispute or that decedent and Hunt were known to be enemies. Indeed, both Frison and Morrast testified that they had no reason to suspect that Hunt would target decedent in a fatal assault, while plaintiff admitted he did not know who Hunt was before the attack.

Plaintiff compares the present case to *Golec v Metal Exch Corp*, decided as a companion case to *Travis*, 453 Mich at 157. However, in *Golec*, the plaintiff was severely burned as he loaded damp scrap metal that included aerosol cans into a furnace using a tractor loader without a plexiglass shield. *Id*. at 157-158. Early in the plaintiff's shift, a minor explosion occurred, splashing the plaintiff with molten aluminum; the plaintiff reported the accident to his shift leader and supervisor, who directed him to return to work. *Id*. at 158-159. Several hours later, the plaintiff was severely burned when a much larger explosion erupted. *Id*. at 159. Our Supreme Court held that the plaintiff had presented sufficient evidence demonstrating that the employer had actual knowledge of the risk, as the employer was aware not only of the significant danger presented by loading damp scrap or aerosol cans into a furnace but also of the fact that both were present in the scrap being loaded by the plaintiff. *Id*. at 184-185. The Supreme Court further reasoned that the "[p]laintiff does not contend that every load of scrap would have exploded, but that every load of scrap had the potential to explode because each load could have contained a closed aerosol can or water." *Id*. at 186. Consequently, because the risk represented a "continually operative dangerous condition," a question of fact existed with respect to whether the plaintiff's injury was certain to occur. *Id*.

Plaintiff contends that, like the scrap metal in *Golec*, Hunt had the potential every day to "explode" and fatally attack someone. In *Golec*, plaintiff adduced competent evidence that the employer was not only aware that the scrap contained moisture and aerosol cans but also that those conditions presented a significant risk of explosion. As such, the issue confronted by the employer was not *if* but *when* an explosion would occur. Such is not the case here. First, unlike the employer in *Golec*, defendants had no knowledge that Hunt posed a risk. Second, for the reasons discussed above, the record does not support plaintiff's contention that Hunt represented a continually operative threat to other employees such that a fatal stabbing was certain to occur. We thus conclude that the trial court properly granted summary disposition in favor of defendants with respect to plaintiff's intentional tort claim.

## C. SPOILATION OF EVIDENCE

Plaintiff next argues that the trial court erred in denying his motion for summary disposition under MCR 2.116(I)(2) because defendants "sanitized" Hunt's personnel file by removing documents pertaining to his 1997 arrest and subsequent conviction. In order to correct this alleged spoliation of evidence, plaintiff maintains the trial court should have granted

summary disposition in his favor as a sanction. Again, we find that plaintiff's argument lacks merit.

This Court reviews a trial court's decision to grant or deny sanctions for the spoliation of evidence for a clear abuse of discretion. *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). An abuse of discretion is found to have occurred when the trial court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

A party has a duty to preserve evidence that it knows or reasonably should know is relevant to a dispute, whether an action has been commenced or whether there is merely a potential for litigation. *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 212; 659 NW2d 684 (2003). In order to redress any prejudice caused by a party's failure to preserve evidence, a trial court has the authority, derived from its inherent powers, to impose sanctions. *Id*. at 211. A trial court properly exercises its discretion to sanction a party "when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." *Id*. at 212. Accordingly, even if it is established that a party intentionally destroyed evidence relevant to a case, the appropriate sanction is generally a presumption that the evidence would have been adverse to that party's case. *Teel v Meredith*, 284 Mich App 660, 667; 774 NW2d 527 (2009). With respect to imposing dismissal as a sanction, this Court has cautioned,

> Dismissal is a drastic step that should be taken cautiously. Before imposing such a sanction, the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper. Before dismissing the case, the trial court should . . . consider[] lesser sanctions, including the exclusion of evidence that is unfairly prejudicial . . . because of [the] failure to preserve the [evidence]. [*Brenner*, 226 Mich App at 163-164 (citations omitted).]

Plaintiff submits two grounds on which he claims it may be inferred that defendants improperly removed documentation concerning Hunt's 1997 arrest and later conviction from his employment record. First, a presentence investigation report created in connection with Hunt's 1997 assault indicates that Hunt fled the scene and went to work after stabbing the victim and that the police department meanwhile called defendants' security personnel to detain Hunt upon his arrival. Second, because Hunt's employment record does not reflect a yearlong absence corresponding with his jail sentence following the 1997 assault, plaintiff maintains that defendants must have provided a letter verifying Hunt's employment for purposes of his participation in a work release program.[5] Plaintiff maintains that the absence of any

---

[5] To the extent plaintiff alleges to have discovered such a letter, we note that a copy of this letter has not been included in the lower court record, nor has it been submitted in conjunction with plaintiff's appellate briefing. Further, if plaintiff did discover a work verification letter, he would be unable to demonstrate the level of prejudice necessary to justify imposition of a sanction as severe as dismissal.

documentation of these events from Hunt's employment record permits an inference that other documents could also be missing and that defendants intentionally removed them in anticipation of the present litigation.

Without offering any proof, Plaintiff assumes not only that these documents were at one time in Hunt's employment record but also that they were deliberately removed. Even if defendants' private security staff detained Hunt in 1997 at the request of the police department, plaintiff has not established that this event would invariably have been documented and retained in Hunt's employment record for a period of 15 years. Likewise, plaintiff has not established that a work verification letter for a work release program would have been included and retained in Hunt's employment record for 15 years. In either instance, plaintiff has presented no evidence regarding any routine policy or procedure for such inclusion. Nor has plaintiff presented evidence demonstrating that defendants deliberately removed or destroyed this documentation in anticipation of litigation.

Finally, even if plaintiff had successfully demonstrated that defendants intentionally removed documents from Hunt's employment record, he has not shown that this conduct would justify imposing the extreme sanction of granting summary disposition in favor of plaintiff. Indeed, the prejudice occasioned by such conduct would be sufficiently redressed by an adverse presumption that defendants were aware of Hunt's 1997 assault. See *Teel*, 284 Mich App at 667. This presumption, however, would not relieve plaintiff of the burden of presenting evidence to prove his case. See *Trupiano v Cully*, 349 Mich 568, 570; 84 NW2d 747 (1957). Consistent with our conclusion above, even assuming that defendants had actual knowledge of Hunt's 1997 assault, plaintiff cannot prevail on his intentional tort claim, as he is unable to establish the requisite knowledge on defendants' part that decedent's death was certain to occur. That is, Hunt's assault in 1997 is simply too remote in time and circumstance to demonstrate that Hunt's unrelated assault of decedent 15 years later was certain to occur. Plaintiff's claim that he is entitled to summary disposition as a sanction for defendants' alleged spoliation of evidence is therefore without merit.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan
/s/ Michael F. Gadola

-10-